LELAND H. WILLIAMS, ERIC M. AUPPERLE, AND L. DUANE PYLE v. INSTI-
    TUTE FOR COMPUTATIONAL STUDIES AT COLORADO STATE UNI-
    VERSITY

No. 8614SC1036

(Filed 5 May 1987)

**Process § 14.3— foreign corporation — contract to be performed in North Carolina
— minimum contacts with North Carolina — exercise of personal jurisdiction
proper**

> The trial court had personal jurisdiction over defendant with regard to
> the claim of the North Carolina plaintiff but not over the claims of the
> Michigan and Texas plaintiffs where the parties entered into a consulting con-
> tract whereby each plaintiff was to render separate and distinct services to
> defendant in exchange for $5,000 in compensation; none of the plaintiffs ac-
> cepted defendant's offer in North Carolina but one plaintiff was to perform
> and did in fact perform substantially in this state; and defendant's contacts
> with this state, including a telephone hook-up with TUCC, of which the North
> Carolina plaintiff was president, and a charter membership for TUCC in de-
> fendant, were sufficient so that exercise of personal jurisdiction did not violate
> due process. N.C.G.S. § 1-75.4(5)a and b; N.C.G.S. § 55-145(a)(1).

> Judge WELLS concurring in part and dissenting in part.

APPEAL by defendant from *Lee, Judge.* Order entered 30
June 1986 in Superior Court, DURHAM County. Heard in the Court
of Appeals 10 February 1987.

Plaintiffs filed suit in Durham County, North Carolina,
against defendant, the Institute for Computational Studies at Col-
orado State University (hereinafter, ICS). The complaint alleges
that plaintiffs entered into a contract with ICS for consultation
services, and that although plaintiffs performed the services re-
quired by the contract, ICS failed to pay plaintiffs as agreed. The
complaint also alleges that ICS is a Colorado corporation, that
plaintiff Leland H. Williams is a citizen of Durham County, North
Carolina, and that plaintiffs Eric M. Aupperle and L. Duane Pyle
are citizens of Michigan and Texas, respectively. Before filing its
answer, ICS filed a motion to dismiss for lack of personal jurisdic-

tion and for insufficient service of process pursuant to G.S. 1A-1, Rules 12(b)(2) and 12(b)(5). The motion was denied, and ICS appeals.

*Haywood, Denny, Miller, Johnson, Sessoms and Patrick by George W. Miller, Jr., and Robert W. Oast, Jr., for plaintiff-appellees.*

*Mills and Associates by William S. Mills and Maria J. Mangano for defendant-appellant.*

PARKER, Judge.

The sole issue to be decided in this appeal is whether the trial court erred in denying ICS's motion to dismiss plaintiffs' claims for lack of personal jurisdiction. As to the claim of plaintiff Williams, we hold that the court had jurisdiction over ICS and properly denied the motion. As to the claims of plaintiffs Aupperle and Pyle, however, we hold there is no personal jurisdiction; therefore, the court below erred in denying the motion as to those claims.

The pleadings, affidavits, and documents in the record as well as the testimony of plaintiff Williams tend to show the following facts. The ICS Articles of Incorporation were executed by its incorporators 12 April 1984. Among the purposes of ICS listed in this document was to "[o]perate unique, state-of-the-art, high performance computation facilities in an optimum manner for the maximum benefit of its member institutions." The prospectus for ICS listed eight institutions as having submitted letters of intent to participate as members, including the University of Michigan, the University of Houston, and Triangle Universities Computation Center (hereinafter, TUCC), a non-profit North Carolina corporation. Among those listed in the prospectus as chairmen of the five "technical committees" of ICS were plaintiff Williams of TUCC, as chairman of the "Operations and Services Committee," plaintiff Aupperle of the University of Michigan, as chairman of the "Data Communications Committee," and plaintiff Pyle of the University of Houston, as chairman of the "Research Committee." In the ICS budget for the twelve months beginning 15 April 1984, under the heading "Fees," was listed $25,000 for "Technical Committee Chairmen."

In January 1984, prior to the execution of the ICS Articles of Incorporation, a meeting of the committee chairmen, including plaintiffs, took place in Fort Collins, Colorado. Also in January 1984, the computer facilities at TUCC, in Research Triangle Park, North Carolina, were linked to the computer facilities at ICS, in Fort Collins, Colorado, by means of a "dedicated" telephone line installed by AT&T especially for that purpose.

Some time in April 1984, TUCC received from ICS a "Membership Agreement" providing that TUCC purchase a charter membership in ICS for $10,000. This document was signed under the heading "AGREED TO" by plaintiff Williams, in his capacity as president of TUCC, on 30 April 1984 in Durham, North Carolina. Plaintiff Williams then mailed this document to ICS in Fort Collins, Colorado, where the director of ICS signed the agreement under the heading "ACCEPTED BY" on 5 May 1984.

In July 1984, there was a second meeting of the ICS committee chairmen, including plaintiffs, in Fort Collins. At this meeting, gaining funds for ICS from the National Science Foundation was discussed.

From 1 July 1984 to 30 June 1985, researchers and professors from various North Carolina universities made use of a Cyber 205 "supercomputer" located at ICS in Fort Collins through the line linking TUCC to ICS. Although TUCC received periodic invoices stating an "amount due" for this use of the ICS facilities, TUCC was not required to pay for the first 200 hours of computer time under the terms of its charter membership with ICS. During this period, TUCC's North Carolina users used only about 70 hours of computer time. Plaintiff Williams testified that parties other than TUCC's North Carolina users also used the TUCC facility to gain access to the ICS computer through the special AT&T line, although he could only say "with certainty" that the University of Houston had to come through the TUCC facility. He could not say the same "with as much certainty" as to the other institutions who were ICS members.

In April 1985, ICS sent TUCC a letter informing TUCC of the "revised sponsorship arrangement" for the upcoming year and asking TUCC to sign up for another year of membership at an increased rate. ICS also sent a follow-up reminder to TUCC, dated 5 June 1985, requesting information regarding TUCC's intentions as

to membership renewal. TUCC did not respond. In a letter dated 3 June 1985, ICS requested that AT&T discontinue service on the dedicated long line circuit linking ICS to TUCC.

In order for our courts to exercise jurisdiction over the person of a nonresident defendant such as ICS, two criteria must be met: first, the court must have jurisdiction over the person of defendant under our State's "long-arm" statute, and second, the exercise of jurisdiction must not violate the due process clause of the fourteenth amendment of the United States Constitution. *Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 348 S.E. 2d 782 (1986); *Miller v. Kite*, 313 N.C. 474, 329 S.E. 2d 663 (1985). Once jurisdiction is challenged, plaintiff has the burden of proving *prima facie* that a statutory basis for jurisdiction exists. *Marion v. Long*, 72 N.C. App. 585, 325 S.E. 2d 300, *disc. rev. denied*, 313 N.C. 604, 330 S.E. 2d 612 (1985).

Defendant argues that there is no statutory long-arm jurisdiction over ICS pursuant to G.S. 55-145(a)(1). Our long-arm statute permits the courts of this State to exercise jurisdiction over the person of a properly-notified defendant when, *inter alia*, a special jurisdiction statute applies. G.S. 1-75.4(2). One such special jurisdiction statute is G.S. 55-145(a)(1) which provides:

(a) Every foreign corporation shall be subject to suit in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:

(1) Out of any contract made in this State or to be performed in this State . . . .

From the record before this Court, the evidence was not, in our view, sufficient for the claims of plaintiffs Aupperle and Pyle to come within the purview of the long-arm statute. Williams testified at the hearing about the services he performed and where he entered into the contract; there is no similar evidence as to when Aupperle and Pyle entered into the contract, where their services were to be performed, and the nature of the services they were to render pursuant to the contract. Neither Aupperle nor Pyle submitted affidavits or testified. Plaintiffs in their brief emphasize that the contract for consulting services was an

oral contract and concede that plaintiffs accepted the contract in different places. According to plaintiffs' brief, "Plaintiffs were to provide this [consulting] service in their capacities as the chairmen of several advisory committees . . . ." The ICS prospectus listed these "advisory committees" under separate titles, including "Operations and Services," to be chaired by plaintiff Williams, "Data Communications," to be chaired by plaintiff Aupperle, and "Research," to be chaired by plaintiff Pyle. These separate titles indicate that the consulting services to be rendered by each of the plaintiffs were distinct in scope from the services to be rendered by the others. Plaintiffs' complaint alleges that ICS owed to each plaintiff separately the sum of $5,000.

For a contract to be made in this State, the last act necessary to make it a binding obligation must be performed in this State. *Leasing Corp. v. Equity Associates*, 36 N.C. App. 713, 245 S.E. 2d 229 (1978). On the facts alleged by plaintiffs, acceptance of the ICS offer was the final act necessary to create a binding contractual obligation. Accordingly, on the evidence before us, none of the plaintiffs made his contract in North Carolina so as to fall within the coverage of G.S. 55-145(a)(1). Although plaintiffs' brief claims that plaintiff Williams accepted the ICS offer in North Carolina, at the hearing on the motion to dismiss, plaintiff Williams testified that the alleged contract for his consultation services "came into being approximately at the time of the January 1984 — January 22 to 24, 1984, meeting of Committee Chairmen *at Colorado State University.*" (Emphasis added.) Plaintiffs concede in their brief that plaintiffs Aupperle and Pyle did not accept the ICS offer in North Carolina.

For a contract to be "performed" in this State so as to fall under G.S. 55-145(a)(1), the contract must be performed here "to a substantial degree." *Koppers Co., Inc. v. Chemical Corp.*, 9 N.C. App. 118, 175 S.E. 2d 761 (1970); *Bowman v. Curt G. Joa, Inc.*, 361 F. 2d 706 (4th Cir. 1966) (applying N.C. Law). There is sufficient evidence in the record to support a finding that plaintiff Williams was to perform and did in fact perform substantially in this State. However, except for conclusory statements in plaintiffs' brief that plaintiffs Aupperle and Pyle were parties to the same oral contract as plaintiff Williams and that this contract contemplated substantial performance in North Carolina, there was no basis for

the trial court to find jurisdiction over ICS under G.S. 55-145(a)(1) as to the contractual claims of plaintiffs Aupperle and Pyle. Plaintiffs Aupperle and Pyle were not affiliated with TUCC, and from the record, they did not perform any consulting services in North Carolina. Therefore, we conclude there is no statutory basis for the court's exercise of long-arm jurisdiction over ICS under G.S. 55-145(a)(1) as to the claims of plaintiffs Aupperle and Pyle.

As an alternative basis of statutory long-arm jurisdiction over ICS, plaintiffs contend that subsections (5)a and (5)b of G.S. 1-75.4, the North Carolina long-arm statute, permit jurisdiction over ICS in this case. General Statute 1-75.4(5) permits a court to exercise long-arm jurisdiction over a properly-notified defendant in any action which

> a. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this State or to pay for services to be performed in this State by the plaintiff; or

> b. Arises out of services actually performed for the plaintiff by the defendant within this State, or services actually performed for the defendant by the plaintiff within this State if such performance within this State was authorized or ratified by the defendant . . . .

G.S. 1-75.4(5)a and b. Again we find that while the record supports a finding that plaintiff Williams' alleged contract with ICS for consulting services was to be performed in this State or was in fact performed in this State, there is no support for such findings as to plaintiffs Aupperle and Pyle.

Since the court below had no jurisdiction over ICS as to the contractual claims of plaintiffs Aupperle and Pyle under the State's long-arm statute, it is unnecessary to address the second question of due process as to these claims. However, we do reach a due process inquiry as to the contractual claim of plaintiff Williams.

The "constitutional touchstone" of an inquiry into whether the exercise of jurisdiction over a nonresident defendant comports with due process is the defendant's purposeful establishment of "minimum contacts" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed. 2d 528

(1985); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In order to be subject to the jurisdiction of the forum state, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of the forum state's laws. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed. 2d 1283, 1298 (1958). The defendant's conduct and connection with the forum state must be "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed. 2d 490, 501 (1980). Generally, maintenance of the suit must not offend "traditional notions of fair play and substantial justice." *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940). *See also International Shoe, supra.*

When the controversy is related to or arises out of the defendant's contacts with the forum state, that state is said to exercise "specific jurisdiction" over the defendant, and the focus of the inquiry is upon the relationships among the defendant, the forum, and the litigation. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed. 2d 404, 411 (1984). However, the cause of action is unrelated to defendant's activities in the forum state, that state may nonetheless exercise "general jurisdiction" so long as there are sufficient "continuous and systematic" contacts between the defendant and the forum state. *Helicopteros Nacionales*, 466 U.S. at 414, 104 S.Ct. at 1872, 80 L.Ed. 2d at 411.

On the facts of the case before us, the controversy between plaintiff Williams and ICS is based on an alleged oral contract between the parties whereby plaintiff Williams was to provide "consulting services" to ICS in exchange for compensation of $5,000. The alleged oral consulting contract between plaintiff Williams and ICS is clearly related to the ICS contacts with North Carolina through TUCC. TUCC, of which plaintiff Williams was president, had executed a written contract with ICS under which TUCC paid $10,000 for a charter membership in ICS. Membership in ICS entitled TUCC to 200 hours of use on the ICS "supercomputer." As a result of this contract, a special AT&T long-line circuit was dedicated as a link between the ICS facilities

and the TUCC facilities in Research Triangle Park, North Carolina.

While we would hesitate to say that these contacts of ICS with North Carolina are sufficient to permit the exercise of general jurisdiction over ICS in a claim unrelated to the contacts, this ICS activity in its relation to TUCC and TUCC's North Carolina computer users is sufficient to support specific jurisdiction of our courts over a claim arising out of or related to the contacts. As our Supreme Court has stated, "Although a contractual relationship between a North Carolina resident and an out-of-state party alone does not *automatically* establish the necessary minimum contacts with this State, nevertheless, a single contract may be a sufficient basis for the exercise of *in personam* jurisdiction if it has a substantial connection with this State." *Tom Togs, Inc.*, 318 N.C. at 367, 348 S.E. 2d at 786. After examining the relationships among the defendant ICS, the State, and the cause of action, we conclude that as to the contractual claim of plaintiff Williams, the ICS contacts with North Carolina are sufficient to justify the assertion of jurisdiction over defendant ICS without violating the requirements of due process.

ICS also contends that the trial court erred in failing to dismiss plaintiffs' claim because the complaint contains insufficient allegations to show the existence of personal jurisdiction over ICS. We disagree.

The failure to plead the particulars of jurisdiction is not fatal to the claim so long as the facts alleged permit the inference of jurisdiction under the statute. Defendant may challenge the court's jurisdiction pursuant to G.S. 1A-1, Rule 12(b)(2). Plaintiff then has the burden of establishing *prima facie* that a statutory ground for asserting jurisdiction applies. *Marion, supra.* When the defendant's motion to dismiss is based on facts not appearing in the record, the court may hear the matter on affidavits, or may direct that the matter be heard wholly or partly on oral testimony or depositions. G.S. 1A-1, Rule 43(e).

With regard to the claims of plaintiffs Aupperle and Pyle, plaintiffs failed to show a basis for statutory jurisdiction, and the trial court therefore erred in failing to grant ICS's motion to dismiss these claims. With regard to plaintiff Williams' claim, plaintiffs met their burden of showing statutory jurisdiction, and

the exercise of that jurisdiction comports with the requirements of due process. The trial court therefore correctly denied ICS's motion as to plaintiff Williams' claim.

Consequently, for the reasons stated above, we affirm the denial of defendant's motion as to the claim of plaintiff Williams; as to the claims of plaintiffs Aupperle and Pyle we reverse the denial of defendant's motion.

Affirmed in part; reversed in part.

Judge COZORT concurs.

Judge WELLS concurs in part and dissents in part.

Judge WELLS concurring in part and dissenting in part.

I concur with the majority as to the trial court's denial of defendant's motion to dismiss as to plaintiff Williams.

As to plaintiffs Aupperle and Pyle, my impression of the materials before the trial court persuades me that the trial court could have reasonably found that the contract between these plaintiffs and defendant was to be and was in fact substantially performed in North Carolina. I therefore vote to affirm the trial court's denial of defendant's motion as to these plaintiffs.