THE INSPIRATIONAL NETWORK, INC., PLAINTIFF v. MARGARET COMBS AND
THOMAS PETREE, IN THEIR INDIVIDUAL CAPACITIES, DEFENDANTS

No. COA97-1109

(Filed 3 November 1998)

## 1. Jurisdiction— long arm statute—allegations in complaint

The trial court did not err by denying defendants' motion to
dismiss for lack of personal jurisdiction under N.C.G.S. § 1A-1,
Rule 12(b)(2) in an action for fraud and unfair trade practices
where the uncontroverted and uncontradicted statements in
plaintiff's complaint and the affidavit of its chief financial officer
were sufficient to establish a prima facie showing of jurisdiction
under North Carolina's long arm statutes, and the court's unim-
peachable findings (based on uncontroverted assertions) sup-
ported its legal conclusion that the acts of MSN are imputed to
defendants Petree and Combs. MSN (a Delaware corporation)
solicited INSP (a North Carolina corporation) to prepare and
broadcast infomercials in North Carolina; INSP performed the
contracted services in North Carolina; MSN forwarded certain
payments to North Carolina but defaulted on the full amount;
defendants Combs and Petree contacted INSP to induce it to
forego suit and accept MSN's note; INSP agreed to accept the
note which was executed by Combs and governed by North
Carolina law; and MSN ultimately defaulted. Plaintiff's allega-
tions that Petree and Combs were the alter ego of MSN went
uncontested and defendants waived any objection to the court's
consideration of allegations in the complaint upon information
and belief.

## 2. Jurisdiction— minimum contacts—sufficient

The trial court did not err by denying defendants' motion to
dismiss for lack of personal jurisdiction under N.C.G.S. § 1A-1,
Rule 12(b)(2) in an action for fraud and unfair trade practices
where defendants had sufficient minimum contacts with North
Carolina and exercise of jurisdiction over their persons did not
offend due process. MSN, a Delaware corporation whose actions
are imputed to defendants, initiated and voluntarily entered into
a contractual arrangement with INSP, a North Carolina corpora-
tion, whereby a series of television production and broadcasting
services were performed in North Carolina by INSP on behalf of
MSN, which thus purposefully availed itself of the privileges of

conducting business in North Carolina to obtain a financial bene-fit; defendants failed to contest allegations that they initiated negotiations with INSP concerning a promissory note which Combs acknowledged signing on behalf of MSN in order to avoid a lawsuit; defendants Combs and Petree contacted INSP in North Carolina by telephone and correspondence and authorized checks and wire transfers that sent payments to INSP in North Carolina; and it is uncontroverted that INSP was injured by MSN's default. North Carolina has an interest in providing a con-venient forum for its citizens to seek redress for injuries, there is no evidence that defendants would be unfairly prejudiced by liti-gation in North Carolina, and the promissory agreement was to be paid in North Carolina and construed in accordance with the laws of North Carolina.

Appeal by defendants from order filed 5 May 1997 by Judge Dennis J. Winner in Mecklenburg County Superior Court. Heard in the Court of Appeals 21 April 1998.

*Nicholls & Crampton, P.A., by Robin Adams Anderson, and Johnson, Prioleau & Lynch, L.L.C. by Keven Kenison, for plaintiff-appellee.*

*Poyner & Spruill, L.L.P., by Constance L. Young and Thomas L. Ogburn, III, for defendants-appellants.*

JOHN, Judge.

Defendants Margaret Combs (Combs) and Thomas Petree (Petree) (defendants) appeal the trial court's 5 May 1997 order deny-ing their motion to dismiss pursuant to N.C.G.S. § 1A-1, Rule 12(b)(2) (1990) (Rule 12(b)(2)). We affirm the trial court.

Relevant facts, as alleged by plaintiff, The Inspirational Network, Inc. (INSP), in its complaint and the affidavit of Mitchell S. Martin (Martin), Vice-President and Chief Financial Officer of INSP, as well as pertinent procedural information include the following: INSP is a North Carolina corporation and cable network which presents a vari-ety of television programs and commercial advertisements. Merchant Square Network, Inc. (MSN) is a Delaware corporation. Petree serves as Chief Financial Officer of MSN, and is a Pennsylvania resident who owns no property in North Carolina. Combs, President and Chief Executive Officer (CEO) of MSN, is a West Virginia resident and also

owns no property in North Carolina. Neither Petree nor Combs own stock in MSN.

Following negotiations conducted through correspondence and via telephone, MSN entered into a contract with INSP whereby the latter produced and aired several "infomercials" in North Carolina. MSN sent and directed several payments to INSP in North Carolina, but ultimately defaulted on its contractual obligation to pay INSP for services rendered in this state.

Both Petree and Combs thereafter contacted Martin by telephone and through written correspondence in an effort to resolve the issue of payment absent litigation. The two MSN executives assured Martin that MSN was adequately capitalized to repay INSP by means of a promissory note. Relying on defendants' assurances, Martin agreed on behalf of INSP to accept MSN's note for the balance of its contractual obligation, and a note was subsequently executed in favor of INSP by Combs as President and CEO of MSN. The note provided: (1) MSN was to pay INSP the principal sum of $103,952.00 in ten monthly installments of $6,355.73, with a final balloon payment of $47,081.63; (2) upon default, any unpaid principal would bear twelve percent interest until full payment; and (3) the note was "to be governed and construed in accordance with the laws of the State of North Carolina."

MSN ultimately defaulted and INSP obtained a judgment against MSN for the debt. However, INSP was unable to recover because MSN had no assets or capital. On 4 December 1996, INSP filed suit against Combs and Petree individually, alleging fraud as well as deceptive trade practices in violation of N.C.G.S. § 75-1 et seq. (1994). On 6 February 1997, defendants jointly moved to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). The trial court denied the motion in an order filed 5 May 1997, finding defendants had not denied or refuted plaintiff's assertions, set forth either in plaintiff's complaint or in the affidavit of Martin, that 1) "Defendants placed telephone calls to the Plaintiff to induce the Plaintiff to take the note," 2) "Defendants represented to [Martin] as Chief Financial Officer of the Plaintiff that MSN was able to repay the note," 3) defendants' statements were false and INSP accepted MSN's promissory note "[i]n reliance on [the] representation[]" that MSN was sufficiently capitalized to repay the note, and 4) that "Defendants had complete domination . . . of the policy and business practice of MSN, and MSN had at no time a separate mind, will or existence of its own."

The trial court concluded that the contacts between INSP and MSN were sufficient for purposes of assumption of jurisdiction by North Carolina courts over MSN, and that

> the unrefuted actions of the Defendants herein are sufficient that the minimum contacts of the corporation MSN are imputed to these two Defendants . . . .

The court ruled it thereby possessed jurisdiction over Combs and Petree. Defendants filed timely notice of appeal, contending the trial court erred in denying their Rule 12(b)(2) motion. We do not agree.

Initially, we observe that

> [a]ny interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant . . . .

N.C.G.S. § 1-277(b) (1996). Such an appeal

> is limited to a determination of whether North Carolina statutes permit our courts "to entertain this action against defendant[s], and, if so, whether this exercise of jurisdiction violates due process."

*Saxon v. Smith*, 125 N.C. App. 163, 168, 479 S.E.2d 788, 791, (1997) (quoting *Styleco, Inc. v. Stoutco, Inc.*, 62 N.C. App. 525, 526, 302 S.E.2d 888, 889, *disc. review denied*, 309 N.C. 825, 310 S.E.2d 358 (1983)). We therefore first examine the relevant statutory provisions.

[1] G.S. § 1-75.4, commonly referred to as our "long arm" statute, *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977), governs the exercise of jurisdiction by North Carolina courts over out-of-state defendants. The section provides, *inter alia*, as follows:

> (4) Local Injury; Foreign Act.—In any action . . . claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury . . . .

> a. Solicitation or services activities were carried on within this State by or on behalf of the defendant . . . .

> (5) Local Services, Goods or Contracts.—In any action which:

a. Arises out of a promise, made anywhere to the plaintiff . . . for the plaintiff's benefit, by the defendant to . . . pay for services to be performed in this State by the plaintiff; or

b. Arises out of services . . . actually performed for the defendant by the plaintiff within this State if such performance within this State was authorized or ratified by the defendant.

G.S. § 1-75.4.

Our jurisdiction statutes are to be "liberally construed in favor of finding that personal jurisdiction exists," *Chapman v. Janko, U.S.A., Inc.*, 120 N.C. App. 371, 374, 462 S.E.2d 534, 536 (1995), subject to the limitations of due process, *Bryson v. Northlake Hilton*, 407 F. Supp. 73, 75 (M.D.N.C. 1976). "[When] jurisdiction is challenged [by a defendant, the] plaintiff has the burden of proving *prima facie* that a statutory basis for jurisdiction exists." *Williams v. Institute for Computational Studies*, 85 N.C. App. 421, 424, 355 S.E.2d 177, 179 (1987) (citation omitted). Where unverified allegations in the complaint meet plaintiff's "initial burden of proving the existence of jurisdiction . . . and defendant[s] . . . d[o] not contradict plaintiff's allegations in their sworn affidavit," such allegations are accepted as true and deemed controlling. *Bush v. BASF Wyandotte Corp.*, 64 N.C. App. 41, 45, 306 S.E.2d 562, 565 (1983); *see also Barclays Leasing, Inc. v. National Business Systems, Inc.*, 750 F. Supp. 184, 186 (W.D.N.C. 1990) (mere allegations of jurisdiction, if not controverted, may be sufficient for a *prima facie* showing of jurisdiction). Further, if the trial court makes findings of fact supported by competent evidence in the record, those findings are conclusive on appeal. *Church v. Carter*, 94 N.C. App. 286, 289-90, 380 S.E.2d 167, 169 (1989). Finally, if the court's findings of fact are not assigned as error, the court's findings are "presumed to be correct." *Saxon*, 125 N.C. App. at 169, 479 S.E.2d at 792; *see also Concrete Service Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 684, 340 S.E.2d 755, 759-60, *cert. denied*, 317 N.C. 333, 346 S.E.2d 137 (1986) (failure of appellant to "except and assign error separately to each finding or conclusion that he or she contends is not supported by the evidence . . . will result in waiver of the right to challenge the sufficiency of the evidence to support particular findings of fact").

Applying the foregoing principles to the record *sub judice*, we first note defendants have not assigned error to the trial court's factual determinations that: (1) Petree and Combs each placed telephone calls to INSP for purposes of inducing acceptance of MSN's

promissory note, (2) Petree and Combs each represented to Martin MSN's ability to repay the note, (3) the statements of defendants were false, and (4) the note was accepted by INSP in reliance thereon. Because defendants have failed to challenge these factual determinations on appeal, they are "presumed to be correct." *Saxon*, 125 N.C. App. at 169, 479 S.E.2d at 792.

In addition, the uncontroverted allegations of plaintiff's complaint included assertions that: (1) defendants contacted INSP to induce acceptance of MSN's promissory note for services requested and performed in North Carolina, (2) Combs executed the note on behalf of MSN, (3) defendants sent payments to North Carolina, (4) MSN defaulted on the note, (5) INSP was damaged by the default, and that (6) "upon information and belief," MSN "was a sham and facade controlled and directed by its alter ego, Defendants Combs and Petree," who "had complete domination, not only of finances, but of policy and business practice . . . to the extent that [MSN] had . . . no separate mind, will or existence of its own."

Further, Martin's uncontradicted affidavit stated, *inter alia*, that: (1) MSN solicited services to be performed in North Carolina, (2) INSP entered a contract with MSN, (3) MSN failed to pay for services rendered in North Carolina, (4) Petree and Combs induced Martin to accept a promissory note in lieu of suit, (5) Martin agreed to the note in reliance on defendants' assurances MSN was adequately capitalized to repay the debt, (6) the note was to be paid in North Carolina and governed by the laws of that state, and that (7) "upon information and belief," defendants utilized their "complete domination" of MSN to defraud INSP, defendants knew MSN was not sufficiently capitalized to pay the note, and they "made the promise to pay [INSP] with the intent to deceive [INSP] into rendering services in North Carolina without compensation."

The uncontroverted assertions of plaintiff and Martin support the trial court's factual determinations which are thereby "conclusive" on appeal. *Church*, 94 N.C. App. at 289-90, 380 S.E.2d at 169. In turn, the court's unimpeachable findings support its legal conclusion that the acts of MSN are imputed to Petree and Combs. What remains is whether the trial court properly concluded that the uncontroverted and uncontradicted statements in INSP's complaint and the affidavit of Martin were sufficient to establish a *prima facie* showing of jurisdiction over MSN under North Carolina's "long arm" statutes, G.S. § 1-75.4(4)(a) and (5)(a)&(b). *See Barclays Leasing, Inc.*, 750 F. Supp. at 186. We hold the trial court did not err.

G.S. § 1-75.4(4)(a) authorizes jurisdiction over a foreign defendant whose act or omission outside this State has caused injury within North Carolina, while at or about the time of that injury "solicitation or services activities were carried on within this State by or on behalf of the defendant." Plaintiff's unchallenged showing included the following: (1) MSN, a Delaware corporation, solicited INSP, a North Carolina corporation, to prepare and broadcast infomercials in North Carolina, (2) INSP performed the contracted services on behalf of MSN in North Carolina, (3) MSN forwarded certain payments to North Carolina for INSP's services, but defaulted on the full contractual amount, and (4) INSP was injured by MSN's default. Plaintiff thus *prima facie* satisfied the requirements of G.S. § 1-75.4(4)(a) for personal jurisdiction over MSN. *See Williams*, 85 N.C. App. at 424, 355 S.E.2d at 179.

G.S. § 1-75.4(5)(a)&(b) governs jurisdiction regarding contracts and services arising out of the promise to pay for services to be performed or actually performed in this State. In this regard, plaintiff's uncontroverted showing included the following: 1) MSN contracted with INSP to pay for the production and airing in North Carolina of infomercials; 2) Combs and Petree contacted INSP to induce it to forego suit and accept MSN's note in payment of services authorized by it and actually rendered in North Carolina for MSN by INSP; 3) in reliance upon the representations of Combs and Petree, INSP agreed to accept the note, which subsequently was executed by Combs and governed by North Carolina law, and 4) MSN ultimately defaulted on its promise to pay for services rendered by INSP. Plaintiff thus also made a sufficient showing of jurisdiction under G.S. § 1-75.4(5)(a)&(b). *See Williams*, 85 N.C. App. at 424, 355 S.E.2d at 179.

Notwithstanding, Petree and Combs maintain that as corporate officers, they may not be held personally liable absent a showing each as an officer was the alter ego of the corporation. *See Moore v. American Barmag Corp.*, 710 F. Supp. 1050, 1057 (W.D.N.C. 1989), *aff'd*, 902 F.2d 44 (1990). Defendants further claim that plaintiff's allegations based upon "information and belief" constitute mere "conclusory allegations" which may not be relied upon to support a *prima facie* showing of jurisdiction. We determine both arguments to be unavailing.

We first reiterate that plaintiff's allegations that Petree and Combs were the alter ego of MSN went uncontested. Plaintiff's alle-

gations were thus deemed true and controlling by the trial court, *Bush*, 64 N.C. App. at 45, 306 S.E.2d at 565, if properly considered in "information and belief" form.

Defendants point to *Hankins v. Somers*, 39 N.C. App. 617, 620, 251 S.E.2d 640, 642, *disc. review denied*, 297 N.C. 300, 254 S.E.2d 920 (1979) as requiring rejection of allegations upon information and belief. In *Hankins*, the defendants argued the requirement of N.C.G.S. § 1A-1, Rule 56(e) (1990) (Rule 56(e)), that summary judgment affidavits "be made on personal knowledge" and "show affirmatively that the affiant is competent to testify to the matters stated therein," *id.*, should be read into N.C.G.S. § 1A-1, Rule 43(e) (1990) (Rule 43(e)), dealing with receipt of affidavits at motion hearings. *Hankins*, 39 N.C. App. at 619-20, 251 S.E.2d at 642.

The *Hankins* defendants, residents of Georgia, appealed the trial court's denial of their Rule 12(b)(2) motion to dismiss. *Id.* at 618, 251 S.E.2d at 641. This Court, reasoning that "[a] motion to dismiss can result in termination of a lawsuit just as much as a motion for summary judgment," *id.* at 620, 251 S.E.2d at 642, held that "[t]o the extent that Rule 43(e) applies to a motion to dismiss," *id.*, the trial court in ruling on a Rule 12(b)(2) motion "should rely only on material that would be admissible at trial." *Id.* The court thus should "consider whether there were sufficient allegations based upon plaintiff's personal knowledge to support the exercise of personal jurisdiction over the . . . defendants." *Id.*

However, assuming *arguendo Hankins* is controlling, *cf. Anderson v. Town of Andrews*, 127 N.C. App. 599, 600-04, 492 S.E.2d 385, 386-88 (1997) and *Lynn v. Overlook Development*, 98 N.C. App. 75, 79, 389 S.E.2d 609, 612-13 (1990), *reversed in part on other grounds*, 328 N.C. 689, 403 S.E.2d 469 (1991) (for purposes of overcoming local municipality's motion to dismiss for failure to state a claim under N.C.G.S. § 1A-1, Rule 12(b)(6) (1990) grounded upon sovereign immunity, allegation "upon information and belief" that municipality maintained liability insurance covering instant cause of action sufficient to allege waiver of governmental immunity); *Reynolds v. Murph*, 241 N.C. 60, 64, 84 S.E.2d 273, 276 (1954) ("positive allegations of fact, upon information and belief, . . . when denied, raise issues of fact determinable by jury"); and *Thompson v. Thompson*, 226 U.S. 551, 566, 57 L. Ed. 347, 353 (1913) (affidavit containing statement on information and belief, absent local law prohibiting use thereof, properly supported assumption of jurisdiction over subject

matter and "circumstance that it was averred on information and belief affected merely the degree of proof"), defendants have waived any objection to the trial court's consideration of allegations upon information and belief set out in plaintiff's complaint. *See RC Associates v. Regency Ventures, Inc.,* 111 N.C. App. 367, 371, 432 S.E.2d 394, 396 (1993) ("[w]hether the affidavit meets the requirements of Rule 56(e) is immaterial in light of the fact that plaintiff failed to make a timely objection to the form of the affidavit").

We note the record reflects defendants' objection to "paragraphs 18 through 23 of [Martin's] affidavit . . . because [the statements therein are] upon information and belief and that's—that's not proper." Assuming the trial court's subsequent response, "Okay," constituted a ruling thereon in defendants' favor, *see* N.C.R. App. P. 10(b)(1) ("[i]n order to preserve a question for appellate review, a party must . . . obtain a ruling upon the party's . . . objection"), the record nonetheless fails to reflect a similar objection to allegations upon information and belief in the complaint. The trial court's order recites its reliance on the "pleadings" and affidavits, bases certain findings upon matters "alleged and not refuted," but pointedly makes no reference to those portions of Martin's affidavit encompassed within defendants' objection.

Accordingly, construing G.S. § 1-75.4 "liberally in favor of jurisdiction, as we must do, it becomes clear that each defendant accepted and ratified the rendition of services . . . provided by the plaintiff in this State." *Century Data Systems, Inc. v. McDonald,* 109 N.C. App. 425, 428-29, 428 S.E.2d 190, 192 (1993). Therefore, based upon the uncontroverted allegations contained in plaintiff's complaint and the uncontested statements in Martin's affidavit, plaintiff came forward with a *prima facie* showing sufficient to subject Combs and Petree to personal jurisdiction in North Carolina under either G.S. § 1-75.4(4)(a) or G.S. § 1-75.4(5)(a)&(b). *See Williams,* 85 N.C. App. at 424, 355 S.E.2d at 179.

[2] Having determined our long-arm statute has been satisfied, we next consider whether the exercise of personal jurisdiction over defendants would be violative of constitutional due process requirements. *Dillon,* 291 N.C. at 676, 231 S.E.2d at 631.

> The existence of personal jurisdiction . . . depends upon . . . a sufficient connection between the defendant and the forum [s]tate as to make it fair to require defense of the action in the forum [state].

*Kulko v. California Superior Court*, 436 U.S. 84, 91, 56 L. Ed. 2d 132, 141 (1978). Accordingly, the test is a defendant's "minimum contacts" with the forum state. *International Shoe Company v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945).

To effectuate minimum contacts, a defendant must have acted to purposefully avail itself of the privileges of conducting activities within North Carolina, thus invoking the benefits and protection of our laws. *United Buying Group, Inc. v. Coleman*, 296 N.C. 510, 515, 251 S.E.2d 610, 614 (1979). The relationship between that defendant and North Carolina must be "such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 501 (1980) (citations omitted). As the United States Supreme Court has explained, the

> "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person, . . ." Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum state.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 542 (1985) (citations omitted). In considering the foreseeability of litigation, "the interests of, and fairness to, both the plaintiff and the defendant must be considered and weighed." *Dillon*, 291 N.C. at 678, 231 S.E.2d at 632.

The existence of "minimum contacts" depends upon the particular facts of each individual case. *United Buying Group, Inc.*, 296 N.C. at 518, 251 S.E.2d at 615. Pertinent factors include the "(1) quantity of the contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience to the parties." *New Bern Pool and Supply Company v. Graubart*, 94 N.C. App. 619, 624, 381 S.E.2d 156, 159 (1989), *aff'd* 326 N.C. 480, 390 S.E.2d 137 (1990) (quoting *Marion v. Long*, 72 N.C. App. 585, 587, 325 S.E.2d 300, 302, *disc. review denied*, 313 N.C. 604, 330 S.E.2d 612 (1985)). No one factor is controlling, but all must be considered in relation to the circumstances of the case. *B.F. Goodrich Company v. Tire King of Greensboro, Inc.*, 80 N.C. App. 129, 132, 341 S.E.2d 65, 67 (1986).

Reviewing the "quantity," the "nature and quality," and the "source" of the contacts, *New Bern Pool and Supply Co.*, 94 N.C. App. at 624, 381 S.E.2d at 159, in the case *sub judice*, we first note that MSN, the actions of which are imputed to defendants, initiated and voluntarily entered into a contractual arrangement with INSP, a North Carolina based corporation, whereby a series of television production and·broadcasting services were performed in North Carolina by INSP on behalf of MSN. The latter thus "purposefully availed [itself] of the privileges of conducting business [in the state] for the purpose of obtaining a financial benefit." *Godwin v. Walls*, 118 N.C. App. 341, 354, 455 S.E.2d 473, 483 (1995).

Moreover, defendants failed to contest allegations they initiated negotiations with INSP, which is located in North Carolina, concerning the promissory note, and Combs acknowledged signing the note on behalf of MSN in order to avoid a lawsuit. Combs also stated she contacted INSP on various occasions. Petree admitted making "approximately a dozen telephone calls to Inspirational Network's location in Charlotte, North Carolina", and "directed correspondence to North Carolina approximately four times" to "work out the payment dispute[]." In addition, defendants did not contest Martin's allegation that each defendant assured him, via telephone and correspondence, that MSN was adequately capitalized to repay the note. By Petree's own admission, he "authorized [several] checks and wire transfers that sent payments to [INSP] in North Carolina" before MSN defaulted on the note.

In addition, North Carolina has an interest in providing a convenient forum for its citizens to seek redress for injuries. *Godwin*, 118 N.C. App. at 355, 455 S.E.2d at 483. "In light of the powerful public interest of [North Carolina] in protecting its citizens against out-of-state tortfeasors, the court has more readily found assertions of jurisdiction constitutional . . . ." *Ciba-Geigy Corp. v. Barnett*, 76 N.C. App. 605, 608, 334 S.E.2d 91, 93 (1985). It is uncontroverted that INSP was injured in the principal amount of $103,952.00 by MSN's default on the note. There is also no evidence that defendants would be unfairly prejudiced by litigation of plaintiff's claims in North Carolina.

We further note that "[a] factor in determining fairness concerning a breach of contract . . . is whether the contract expressly provides that the law of the forum state would apply to actions arising out of the contract." *Cherry, Bekaert & Holland v. Brown*, 99 N.C. App. 626, 635, 394 S.E.2d 651, 657 (1990). The promissory agreement in the case *sub judice* was to be paid in North Carolina and "governed

and construed in accordance with the laws of the State of North Carolina."

Finally, defendants did not contradict plaintiff's allegations that MSN was a "sham and facade and controlled and directed by its alter ego, Defendants Combs and Petree, simply as a 'cloak and shield' to confuse and defraud their creditors," and that defendants had complete domination of MSN's finances, policy, and business practice in respect to execution of the note. These uncontroverted allegations were "presumed [by the trial court] to be correct," *Saxon*, 125 N.C. at 169, 479 S.E.2d at 792. In view of the uncontested alter ego status of Combs and Petree, therefore, and the consequent imputation to them individually of the acts of MSN, it cannot be said to be "[un]fair to require defense of the [instant] action" in North Carolina. *Kulko*, 436 U.S. at 91, 56 L. Ed. 2d at 141.

In sum, "[u]pon review of these factors and the relevant cases, we conclude that [the defendants have] sufficient minimum contacts, purposely made, with North Carolina and that exercise of jurisdiction over [their] person by our courts does not offend due process." *B.F. Goodrich Company*, 80 N.C. App. at 133, 341 S.E.2d at 68. Accordingly, we affirm the trial court's order denying defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

Affirmed.

Chief Judge EAGLES and Judge TIMMONS-GOODSON concur.