JCG & Assocs., LLC v. Disaster Am. USA, LLC, 2019 NCBC 78.

STATE OF NORTH CAROLINA

BRUNSWICK COUNTY

JCG & ASSOCIATES, LLC; MIP 1, LLC; JAMES BONICA; and PATRICIA BONICA,

      Plaintiffs and Counterclaim Defendants,

v.

DISASTER AMERICA USA, LLC; DA ROOFING SYSTEMS; DONALD HUSK; and JASON HUSK,

      Defendants,

and

DISASTER AMERICA OF NORTH CAROLINA, LLC,

      Defendant and Counterclaim Plaintiff.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 746

**ORDER AND OPINION ON DEFENDANT DONALD HUSK'S MOTION TO DISMISS**

1. Hurricane Florence devastated eastern North Carolina in 2018. When the storm dissipated, property owners began the toilsome process of repair and remediation. Among them were James and Patricia Bonica and MIP 1, LLC, each of whom were approached by Disaster America USA, LLC and Disaster America of North Carolina, LLC (together, "Disaster America") about repair services. The Bonicas and MIP 1 now allege that they were duped—that Disaster America was an unlicensed contractor that either overcharged them or charged them for services that were never performed. A fourth plaintiff, JCG & Associates, LLC, alleges that Disaster America fraudulently used its name and general contractor's license as part of the scheme.

2.      This Opinion addresses a motion to dismiss by Donald Husk, one of Disaster America's principals. The complaint alleges that Husk and his son (Jason) share responsibility for Disaster America's misconduct. Husk argues that this Court lacks personal jurisdiction over him and, as a result, that all claims against him must be dismissed. (ECF No. 4.) For the reasons given below, the Court **DENIES** the motion.

> *Shipman & Wright, LLP, by William Cory Reiss, for Plaintiffs JCG & Associates, LLC, MIP 1, LLC, James Bonica, and Patricia Bonica.*

> *Hodges Coxe & Potter, LLP, by Samuel B. Potter, for Defendants Disaster America USA, LLC, Disaster America of North Carolina, LLC, DA Roofing Systems, Donald Husk, and Jason Husk.*

Conrad, Judge.

## I.
## DISCUSSION

3.      The issue here is whether the plaintiffs have made a prima facie showing of personal jurisdiction over Husk. To decide that issue, the Court must consider the parties' competing affidavits. *See, e.g.*, *Bauer v. Douglas Aquatics, Inc.*, 207 N.C. App. 65, 68–69, 698 S.E.2d 757, 761 (2010) (deciding whether plaintiff carried his burden to make out prima facie case based on dueling affidavits). In addition, allegations in the complaint, if not contradicted by the defendant's affidavits, "are accepted as true and deemed controlling." *Inspirational Network, Inc. v. Combs*, 131 N.C. App. 231, 235, 506 S.E.2d 754, 758 (1998). Thus, the record includes "the uncontroverted allegations in the complaint and the uncontroverted facts in the sworn affidavit[s]" and associated exhibits. *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 616, 532 S.E.2d 215, 218 (2000).

4.     Briefing is complete, and the Court held a nonevidentiary hearing on September 20, 2019, at which all parties were represented by counsel. Husk's motion is ripe for determination.

## A. Background

5.     North Carolina has seen its share of natural disasters in recent years. Among the worst was Hurricane Florence. This powerful, slow-moving storm made landfall in September 2018 and caused extensive damage all along the coast. The Village of Bald Head Island was not spared. Homeowners, including the Bonicas and MIP 1, could not access the village for two weeks after the storm. (*See* Compl. ¶ 31, ECF No. 2.) They eventually returned home to find substantial wind and water damage. (*See* Compl. ¶¶ 32, 33.) Shortly after, the Bonicas and MIP 1 engaged Disaster America to perform repairs. (*See* Compl. ¶¶ 34, 35.)

6.     Disaster America is a group of related companies that provides catastrophic remediation and restoration services. (*See* Compl. ¶¶ 13, 15.) These companies include Disaster America USA, which is a Texas LLC, and Disaster America of North Carolina, which is a North Carolina LLC. (Compl. ¶¶ 4, 6.) Donald Husk, a Texas resident, is the CEO of both. (*See* Def.'s Ex. A ¶¶ 2, 5, 7, ECF No. 18.2 ["Husk Aff."].) Beyond that, the outline of Disaster America's portfolio is less clear. The complaint suggests that it includes at least one unincorporated entity (DA Roofing Systems, also a defendant) and a number of transient entities first organized in States where natural disasters occurred and later dissolved or left dormant after the repair work

dried up, perhaps to be revived should Mother Nature strike again. (*See* Compl. ¶¶ 5, 15.)

7. It appears that Disaster America approached the Bonicas and MIP 1 to secure their business. Husk's son contacted them and provided copies of the contracts that each later signed. (*See* Compl. ¶¶ 34, 35.) The contracts do not specify the anticipated scope of repairs. Rather, they authorize Disaster America to negotiate with the homeowners' insurance carriers and then to perform approved repairs for the full scope of insurance proceeds. (*See* Pls.' Ex. 1, ECF No. 23.2; Compl. ¶¶ 37, 38.) The contracts identify "DISASTER AMERICA USA, LLC/JCG & ASSOCIATES, LLC" as the general contractor. (*See* Pls.' Ex. 1; Compl. ¶ 40.)

8. In his affidavit, Husk denies drafting the contracts, making any representations to the Bonicas or MIP 1, or traveling to North Carolina for any purpose related to this case. (*See* Husk Aff. ¶¶ 1, 10, 16.) But he did sign the contracts on behalf of Disaster America. (Pls.' Ex. 1.) And the contracts state that they were "produced by DA ROOFING SYSTEMS/JCG & ASSOCIATES LLC . . . JH/dh," the initials "dh" standing for Husk. (Pls.' Ex. 1; *see also* Compl. ¶ 44.) Husk also helped to carry out the contracts at least by engaging a North Carolina company called Miracle Movers to pack and store the homeowners' personal property. (*See* Compl. ¶ 58; Pls.' Ex. 2, ECF No. 23.3.)

9. Within six months, the Bonicas and MIP 1 had separately given notice to terminate their contracts. (*See* Pls.' Ex. 3 ¶¶ 6, 9, ECF No. 23.4 ["Reiss Aff."].) Their reasons were twofold. First, they asserted that Disaster America had no general

contractor's license at the time of the contracts and fraudulently identified JCG & Associates for that purpose, rendering the contracts invalid. (*See* Compl. ¶¶ 52, 66; Reiss Aff. Ex. B, ECF No. 23.7; Pls.' Ex. 4 ¶ 10, ECF No. 23.17.) They further asserted that Disaster America hadn't actually performed any restoration work. (*See* Compl. ¶¶ 52, 66; Reiss Aff. Ex. B.)

10. Husk responded on behalf of Disaster America. In a letter to MIP 1's counsel, Husk submitted an unpaid invoice and threatened to place a lien on MIP 1's North Carolina property if payment was not made within seven days. (*See* Reiss Aff. ¶ 7; Reiss Aff. Ex. A, ECF No. 23.6.) In an e-mail to the Bonicas' counsel, Husk warned that any stored personal belongings would not be released absent full payment. (Reiss Aff. ¶ 10; Reiss Aff. Ex. C, ECF No. 23.8.)

11. This lawsuit ensued. The Bonicas and MIP 1 allege that the demands made by Husk constitute unfair debt collection practices. (Compl. ¶¶ 109–12.) They also assert claims for fraud, constructive fraud, unfair or deceptive trade practices, racketeering, and negligence, among others. Underlying these claims are allegations that Disaster America wrongfully used the name and general contractor's license of JCG & Associates to obtain business and also inflated invoices by overcharging or charging for work that was never performed, including the work assigned to Miracle Movers. JCG & Associates has asserted similar claims, along with a claim for trademark infringement.

B. <u>Analysis</u>

12. Determining whether personal jurisdiction exists is often described as a two-step inquiry: does any statute grant jurisdiction over the defendant, and would exercising jurisdiction violate due process? Husk does not challenge the Court's statutory authority. So the Court addresses only step two.

13. "The Due Process Clause of the Fourteenth Amendment [to the United States Constitution] limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The defendant must have "certain minimum contacts" with the forum "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and quotation marks omitted). In most cases, including this one, the pertinent question is whether the claims at issue arise out of the defendant's conduct within or directed to the forum State. This is called "specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The relevant contacts are those that the defendant (not someone else) creates with the forum State. *See Walden v. Fiore*, 571 U.S. 277, 284–85 (2014).

14. Husk's brief is blunt. He argues that the complaint includes no allegations that he "completed *any* acts in his individual capacity." (Br. in Supp. 4, ECF No. 18.) Rather, "[a]t all times relevant to the facts in this case, Husk has only had contact in the State of North Carolina in his capacity as CEO of [Disaster America], and while acting on behalf of [Disaster America]." (Br. in Supp. 6.) Contacts made as a company

officer, Husk argues, are not sufficient to establish personal jurisdiction. (*See* Br. in Supp. 4–6.)

15. This argument goes too far. A defendant's status as a corporate officer does not, by itself, subject him to jurisdiction wherever the corporation is subject to suit. *See, e.g.*, *Calder v. Jones*, 465 U.S. 783, 790 (1984); *Robbins v. Ingham*, 179 N.C. App. 764, 771, 635 S.E.2d 610, 615 (2006). But neither does it "somehow insulate [him] from jurisdiction." *Calder*, 465 U.S. at 790. Our courts have rejected the argument that "personal jurisdiction over a defendant may only be based on the contacts he has with the state in the course of his private life." *Saft Am., Inc. v. Plainview Batteries, Inc.*, 189 N.C. App. 579, 596, 659 S.E.2d 39, 50 (2008) (Arrowood, J., dissenting), *rev'd for reasons stated in dissent,* 363 N.C. 5, 673 S.E.2d 864 (2009) (per curiam). Put simply, "a corporate officer's contacts with North Carolina—whether established in his individual capacity or in his capacity as an officer or agent of his company—*count* for purposes of determining whether that particular individual has sufficient minimum contacts with North Carolina." *Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC*, 2015 NCBC LEXIS 7, at *19 (N.C. Super. Ct. Jan. 21, 2015) (collecting cases).

16. At oral argument, Husk's counsel acknowledged as much and instead pressed a narrower position, insisting that any contacts Husk had with North Carolina in his corporate capacity were too insubstantial to support jurisdiction. Even assuming this argument is timely, the Court disagrees. It is undisputed that Husk prepared and sent a demand for payment to MIP 1's counsel in North Carolina

in which he threatened to file a lien on MIP 1's North Carolina property. (*See* Reiss Aff. Ex. A; Husk Aff. ¶ 9.) Separately, Husk told the Bonicas that their personal property in North Carolina would not "be released until which time Disaster America is paid in full." (*See* Reiss Aff. Ex. C.) As alleged, Husk sent these communications with full knowledge that the contracts—which he had signed—were invalid because Disaster America had no general contractor's license at the time they were made. (*See* Compl. ¶ 109.) These acts, directed to North Carolina, give rise to at least the asserted claim for unfair debt collection practices.

17. It would not offend traditional notions of fair play and substantial justice to exercise jurisdiction over Husk in these circumstances. His "intentional, and allegedly tortious, actions were expressly aimed at" North Carolina, and he knew that any injury from threatening to impose a lien on real property or withholding personal property would be felt here. *Calder*, 465 U.S. at 789. Husk should have reasonably anticipated being sued in this forum. *See, e.g.*, *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168–69 (2d Cir. 2015) (affirming exercise of personal jurisdiction based on attempts to collect debt in forum); *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 177 (4th Cir. 2002) (affirming exercise of personal jurisdiction based on submission of false credit applications to two companies in forum).

18. Of course, the asserted claims go beyond allegedly unfair debt collection practices, and many courts have held that specific jurisdiction should be decided on a claim-by-claim basis. *See, e.g.*, *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007); *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999).

Here, though, Husk "did not argue that personal jurisdiction might exist over some claims and not others, nor did [he] offer a more nuanced, claim-by-claim analysis of the personal jurisdiction issue." *SEC v. Straub*, 2013 U.S. Dist. LEXIS 116483, at *18 (S.D.N.Y. Aug. 5, 2013). For that reason, the Court need not and does not decide whether a claim-by-claim analysis would have been appropriate or what the result of that analysis would have been. *See Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed. App'x 86, 92 n.4 (10th Cir. 2012) ("Consequently, because the parties have not advanced their specific-jurisdiction arguments on a claim-by-claim basis, we have no need to opine regarding the appropriateness of this mode of analysis and about whether employing it might affect the outcomes that we reach here.").

19. In short, the contacts Husk made with North Carolina in his capacity as an officer of Disaster America are not only relevant but sufficient to satisfy the minimum contacts required by principles of due process. The Court concludes that the plaintiffs have carried their burden to make a prima facie showing of personal jurisdiction.

## II.
## CONCLUSION

20. For these reasons, the Court **DENIES** Husk's motion to dismiss for lack of personal jurisdiction.

**SO ORDERED**, this the 19th day of December, 2019.


                                 /s/ Adam M. Conrad
                                 Adam M. Conrad
                                 Special Superior Court Judge
                                  for Complex Business Cases