SUMMIT LODGING, LLC, A NORTH CAROLINA LIMITED LIABILITY COMPANY, AND WALTER W. KENNEDY, JOSEPH J. TURNER, JR., WILLIAM KELLY DURHAM, ROBERT J. McGINN, AND JAMES H. TINDAL, JR., AS MEMBERS OF SUMMIT LODGING, LLC, PLAINTIFFS v. JONES, SPITZ, MOORHEAD, BAIRD & ALBERGOTTI, P.A., AND EDWARD A. SPITZ, DEFENDANTS

No. COA05-248

(Filed 21 March 2006)

## Jurisdiction— personal—specific—long-arm statute—minimum contacts

The trial court erred by granting defendants' motion to dismiss based on the erroneous conclusion that it lacked personal jurisdiction in a case where plaintiffs claim they were economically injured by defendant South Carolina law firm's failure to advise them regarding the anti-deficiency statute for a loan restructuring in North Carolina, because: (1) plaintiffs made a prima facie case for personal jurisdiction under the long-arm statute by showing that defendants' activities regarding the loan, including correspondence and phone conversations with the seller's North Carolina counsel, constitute service activities being carried on within North Carolina by or on behalf of defendants; (2) defendants had sufficient contacts with North Carolina even though they have never been physically present in North Carolina since the quantity or even the absence of actual physical contacts with the forum state merely constitutes a factor to be considered and is not controlling weight in light of modern business practices; (3) defendants purposefully availed themselves of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its law, and they should have

SUMMIT LODGING, LLC v. JONES, SPITZ, MOORHEAD, BAIRD & ALBERGOTTI, P.A.

[176 N.C. App. 697 (2006)]

reasonably anticipated being subject to jurisdiction in North Carolina; (4) the Court of Appeals has readily found jurisdiction constitutional in tort cases based on the powerful public interest of a forum state in protecting its citizens against out-of-state tort-feasors; (5) South Carolina does not have an anti-deficiency statute, and thus, their courts will not be as familiar with North Carolina law; and (6) there is minimal travel burden on defendants to defend a claim in North Carolina.

Appeal by plaintiffs from order entered 11 January 2005 by Judge W. Russell Duke, Jr., in Superior Court in Pitt County. Heard in the Court of Appeals 12 October 2005.

*Ward and Smith, P.A., by A. Charles Ellis and E. Bradley Evans, for plaintiff-appellants.*

*Parker, Poe, Adams & Bernstein, L.L.P., by James C. Thornton, for defendant-appellees.*

HUDSON, Judge.

In July 2004, plaintiffs filed suit against defendants, attorneys who had represented plaintiffs, for professional malpractice. Defendants filed a motion to dismiss for lack of personal jurisdiction. On 11 January 2005, the trial court granted defendants' motion to dismiss. Plaintiffs appeal. We reverse.

Summit Lodging is a North Carolina limited liability company with its principal place of business in Greenville, North Carolina. Defendant Jones, Spitz, Moorheard, Baird & Albertgotti, P.A., ("defendant firm") is a law firm located in Anderson, South Carolina. Defendant Edward A. Spitz ("Spitz") is an attorney licensed to practice law in South Carolina, but not in North Carolina; Spitz was employed by defendant firm at all times relevant here.

In 1999, the members of Summit Lodging ("Summit members") retained Spitz and defendant firm to organize Summit Lodging as a limited liability company pursuant to North Carolina law. None of the Summit members are North Carolina residents. Summit Lodging was organized to facilitate the purchase, ownership, and operation of a Fairfield Inn hotel in Greenville, North Carolina. Spitz prepared, signed, and filed the Articles of Organization for Summit Lodging with the North Carolina Secretary of State. Spitz and defendant firm also prepared a 33-page operating agreement for Summit Lodging,

SUMMIT LODGING, LLC v. JONES, SPITZ, MOORHEAD, BAIRD & ALBERGOTTI, P.A.

[176 N.C. App. 697 (2006)]

which included terms that it would be interpreted under North Carolina law. Spitz and Stephen J. Potts, also an attorney employed by defendant firm, also represented Summit Lodging in connection with its purchase of the Fairfield Inn, by preparing the bill of sale and an assignment and assumption of leases and contracts. Spitz and defendant firm communicated by mail and telephone with counsel for Quality Oil Company, LLC ("Quality Oil"), the seller of the Fairfield Inn. In September 1999, defendant firm sent a letter to North Carolina attorney Charles L. McLawhorn, Jr., requesting that McLawhorn serve as North Carolina counsel for Summit Lodging in the purchase transaction of the Fairfield Inn. McLawhorn, whose office is in Greenville, North Carolina, performed legal services in connection with the purchase of the Fairfield Inn and billed defendant firm for these services. None of the members of defendant firm participated in the closing, which took place on 4 January 2000 in North Carolina.

At the closing, Summit members signed a purchase money promissory note ("the note") for most of the $3.75 million purchase price. The note provided for a maturity date of one year and contained personal guarantees by each of the individual summit members. After Summit Lodging failed to meet its obligation to repay the note within a year, Summit member Turner and the President of Quality Oil, Graham Bennett, negotiated extensions to the note. In December 2001, Summit Lodging prepared a proposal to restructure the debt by splitting the note into two separate promissory notes. In January 2002, Turner contacted Spitz to draft documents for this deal. Thereafter, Spitz sent two letters and a few emails to Bennett regarding the proposed split of the note. Spitz and Bennett also discussed the matter on the telephone. On 25 January 2002, North Carolina counsel for Quality Oil sent a letter to Spitz proposing the terms of a new promissory note whereby Reliable Tank, an affiliate of Quality Oil, would loan $1,775,000 to Summit Lodging to pay a portion of its indebtedness to Quality Oil; the loan was to be secured by personal guarantees of the Summit members. Spitz reviewed the letter, forwarded it to one of the Summit members, and spoke with the member regarding the proposal presented in the letter. Spitz claims that he reminded Summit member Turner that defendant firm could not advise Summit Lodging regarding North Carolina law, that only North Carolina counsel could do so. Summit Lodging executed a promissory note to Reliable Tank for $1,775,000 and the Summit members signed personal guarantees for the Reliable Tank note. In February 2002, Spitz sent a letter to counsel for Quality Oil and Reliable Tank directing Reliable Tank to disburse the loan proceeds.

SUMMIT LODGING, LLC v. JONES, SPITZ, MOORHEAD, BAIRD & ALBERGOTTI, P.A.

[176 N.C. App. 697 (2006)]

After Summit Lodging defaulted on the Reliable Tank note, Reliable Tank sought to collect from Summit Lodging and the individual Summit members. At the time of this appeal, none of the $1,775,000 had been paid. The North Carolina Anti-Deficiency Statute, N.C. Gen. Stat. § 45-21.38 (2001), limits the holder of a purchase money mortgage or deed of trust, upon default and foreclosure, to recovery of the security or the proceeds from the sale of the security. *Id.* The statute prohibits deficiency judgments where a mortgage on real property represents part of the purchase price. *Id.* Here, when Summit Lodging executed the Reliable Tank note, that portion of the debt became unsecured, with personal guarantees, and not subject to the anti-deficiency statute. Reliable Tank thus seeks recovery from the individual Summit members. Plaintiffs brought suit for legal malpractice contending that Spitz and defendant firm failed to inform them of this consequence of the debt restructuring.

Plaintiffs argue that the trial court erred in granting defendants' motion to dismiss for lack of personal jurisdiction. Plaintiffs contend that the findings of fact made by the trial court, as well as the evidence of record, establish that North Carolina courts have jurisdiction over defendants.

On appeal, we review an order determining personal jurisdiction to determine whether the trial court's findings of fact are supported by competent evidence; if so, we must affirm the trial court. *Cooper v. Shealy*, 140 N.C. App. 729, 732, 537 S.E.2d 854, 856 (2000). Here, plaintiffs do not challenge the court's findings of fact, but rather, argue that the findings and additional evidence of record do not support the court's conclusion that it lacked personal jurisdiction over defendants. We review a trial court's conclusion that it lacks personal jurisdiction *de novo. Starco, Inc. v. AMG Bonding & Ins. Servs., Inc.*, 124 N.C. App. 332, 336, 477 S.E.2d 211, 215 (1996).

To determine whether our courts have personal jurisdiction, we engage in a two-part analysis. First, we must "examine whether the exercise of jurisdiction over the defendant falls within North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4." *Better Business Forms, Inc. v. Davis*, 120 N.C. App. 498, 500, 462 S.E.2d 832, 833 (1995) (internal citation omitted). We must then determine "whether the defendant has sufficient minimum contacts with North Carolina such that the exercise of jurisdiction is consistent with the due process clause of the Fourteenth Amendment to the United States Constitution." *Id.* Plaintiffs bear the burden of proving *prima facie*

SUMMIT LODGING, LLC v. JONES, SPITZ, MOORHEAD, BAIRD & ALBERGOTTI, P.A.

[176 N.C. App. 697 (2006)]

that the court has jurisdiction. *See Filmar Racing, Inc. v. Stewart,* 141 N.C. App. 668, 671, 541 S.E.2d 733, 736 (2001).

Plaintiffs argue that the trial court erred in concluding that the requirements of the long-arm statute were not met and that defendants lack sufficient contacts with North Carolina to satisfy due process. We agree.

We first note that our Courts construe our long-arm statute in favor of establishing the existence of personal jurisdiction. *Inspirational Network, Inc. v. Combs,* 131 N.C. App. 231, 235, 506 S.E.2d 754, 757 (1998). Under the "local injury/foreign act" subsection of our long-arm statute, in order to establish jurisdiction over defendant, a plaintiff must claim that: (1) it suffered an injury within North Carolina which arose out of a defendant's acts or omissions outside the state; and (2) that at or about the time of the injury, "solicitation or services activities were carried on within this State by or on behalf of defendant." N.C. Gen. Stat. § 1-75.4(4) (2004). "The statute requires only that the action 'claim' injury to person or property within this state in order to establish personal jurisdiction. It does not mandate evidence or proof of such injury." *Godwin v. Walls,* 118 N.C. App. 341, 349, 455 S.E.2d 473, 480 (1995).

Plaintiffs claim that Summit Lodging, a North Carolina corporation, was injured economically, by defendants' failure to advise them regarding the anti-deficiency statute. The failure to advise occurred in South Carolina, thus satisfying the foreign act requirement. It is undisputed that at or about the time of the injury, defendants provided legal services to plaintiffs to secure loan restructuring for Summit Lodging from Quality Oil and Reliable Tank, both North Carolina companies. We conclude that defendants' activities regarding the loan, including correspondence and phone conversations with North Carolina counsel for Quality Oil and Reliable Tank, constitute "services activities" being carried on within North Carolina by or on behalf of defendants, within the meaning of the statute. Thus, we conclude that plaintiffs have made out a *prima facie* case for personal jurisdiction pursuant to the long-arm statute. Regardless, by enacting N.C. Gen. Stat. § 1.75-4, "the General Assembly intended to make available to North Carolina courts the full jurisdictional powers permissible under federal due process." *Dillon v. Numismatic Funding Corp.,* 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977). "[T]he critical inquiry in determining whether North Carolina may assert *in personam* jurisdiction over a defendant is whether the

SUMMIT LODGING, LLC v. JONES, SPITZ, MOORHEAD, BAIRD & ALBERGOTTI, P.A.

[176 N.C. App. 697 (2006)]

assertion comports with due process." *J.M. Thompson Co. v. Doral Mfg. Co.*, 72 N.C. App. 419, 424, 324 S.E.2d 909, 913 (internal citation omitted) (1985).

"Due process requires that the defendant have 'minimum contacts' with the state in order to satisfy 'traditional notions of fair play and substantial justice.' " *Cooper v. Shealy*, 140 N.C. App. 729, 734, 537 S.E.2d 854, 857 (2000) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945)). "Because the controversy in this case arises out of defendant's contacts with this State, specific jurisdiction is the type sought here." *Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 366, 348 S.E.2d 782, 786 (1986). "To establish specific jurisdiction, the court looks at the relationship among the parties, the cause of action, and the forum state to see if minimum contacts are established." *Carson v. Brodin*, 160 N.C. App. 366, 372, 585 S.E.2d 491, 496 (2003) (internal citation and quotation marks omitted). "Whether minimum contacts are present is determined not by using a mechanical formula or rule of thumb but by ascertaining what is fair and reasonable under the circumstances." *Better Business Forms*, 120 N.C. App. at 500, 462 S.E.2d at 833. "There must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (internal citation omitted). "The activity must be such that defendant could reasonably anticipate being brought into court there." *Fran's Pecans, Inc. v. Greene*, 134 N.C. App. 110, 114, 516 S.E.2d 647, 650 (1999) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 62 L. Ed. 2d 490, 498 (1980)). In determining whether there are sufficient minimum contacts, we consider the following factors:

> (1) quantity of the contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience to the parties.

*New Bern Pool & Supply Co. v. Graubart*, 94 N.C. App. 619, 624, 381 S.E.2d 156, 159 (1989), *aff'd*, 326 N.C. 480, 390 S.E.2d 137 (1990).

We conclude that defendant had sufficient contacts with North Carolina. In so concluding, we considered that defendants have never been physically present in North Carolina. However, "[i]n light of modern business practices, the quantity, or even the absence, of actual physical contacts with the forum state merely constitutes a factor to be considered and is not of controlling weight." *Ciba-Geigy*

SUMMIT LODGING, LLC v. JONES, SPITZ, MOORHEAD, BAIRD & ALBERGOTTI, P.A.

[176 N.C. App. 697 (2006)]

*Corp. v. Barnett,* 76 N.C. App. 605, 607-08, 334 S.E.2d 91, 93 (1985) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 85 L. Ed. 2d 528 (1985)); *see also New Bern Pools, Inspirational Network, Inc. v. Combs,* 131 N.C. App. 231, 506 S.E.2d 754 (1998) (both cases allowing personal jurisdiction over foreign defendant who was never physically present in the state).

Although defendants were not physically present in North Carolina, they represented Summit Lodging, a North Carolina company, from its inception and during its loan restructuring. Indeed, defendants drafted the Operating Agreement for Summit Lodging, pursuant to North Carolina law. Defendant Spitz prepared, signed (as "Organizer"), and filed the Articles of Organization for Summit Lodging with the North Carolina Secretary of State. Summit Lodging was organized to purchase and run a motel in North Carolina. During the negotiations for the purchase of the Fairfield Inn, defendants communicated, by mail and telephone, with North Carolina counsel for seller Quality Oil. Defendants also communicated by letter and telephone with Charles McLawhorn, Jr., the Greenville, North Carolina attorney who attended the closing on plaintiffs' behalf. McLawhorn sent the bills for his services to defendant firm.

Approximately two years later, in January 2002, defendants assisted plaintiffs in modifying the original debt instrument. Defendants, as counsel for plaintiffs, sent two letters to North Carolina counsel for Quality Oil and Reliable Tank, proposing how the debt would be modified. Defendants also exchanged emails and spoke on the telephone with counsel for Quality Oil and Reliable Tank about the matter. Thereafter, Summit Lodging and the Summit members signed a promissory note to Reliable Tank for $1,775,000. The following month, defendants sent a letter to North Carolina counsel for Reliable Tank to proceed with disbursement of the loan. We conclude that through all of the above-mentioned contacts with North Carolina, defendants "purposefully availed" themselves of "the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Better Business Forum,* 120 N.C. App. at 500, 462 S.E.2d at 833. By these activities, defendants should have reasonably anticipated being subject to jurisdiction in North Carolina.

Furthermore, this Court has "readily" found jurisdiction constitutional in tort cases, because of the "powerful public interest of a forum state in protecting its citizens against out-of-state tortfeasors." *Saxon v. Smith,* 125 N.C. App. 163, 173, 479 S.E.2d 788, 794 (1997). It

HARRIS v. PINEWOOD DEV. CORP.

[176 N.C. App. 704 (2006)]

is also important to note that South Carolina does not have an anti-deficiency statute and that South Carolina courts will not be as familiar with North Carolina law as our courts are. Finally, as South Carolina is our neighboring state, there is minimal travel burden on defendants to defend a claim in North Carolina.

For the reasons discussed, we conclude that the trial court erroneously dismissed plaintiffs' claims for lack of personal jurisdiction.

Reversed.

Judges BRYANT and CALABRIA concur.