Diamond Candles, LLC v. Winter, 2020 NCBC 17.

STATE OF NORTH CAROLINA

PERSON COUNTY

DIAMOND CANDLES, LLC,

Plaintiff,

v.

JUSTIN WINTER; BAKER BOTTS,
LLP; BRIAN LEE; SYMPHONY
COMMERCE; and HENRY KIM,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 736

**ORDER AND OPINION ON
DEFENDANTS' RULE 12(B)(2) AND
12(B)(3) MOTIONS TO DISMISS**

1.      THIS MATTER is before the Court on Defendants Baker Botts, LLP ("Baker Botts") and Brian Lee's ("Lee") Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Rule 12(b)(2) of North Carolina Rules of Civil Procedure ("Rules"), and  Defendants Symphony Commerce and Henry Kim's ("Kim") Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(3) and Motion to Dismiss or, in the Alternative, to Stay Under the Doctrine of Forum Non Conveniens (together, the "Motions").

2.      The Court, having considered the Motions, affidavits, briefs and oral argument, and relevant authorities, finds that Baker Botts and Lee's Motion should be GRANTED and Symphony Commerce and Kim's Motions should be DENIED.

*Miller Law Firm, PLLC, by W. Stacy Miller II, and Loevy & Loevy, by Daniel Moore Twetten, for Plaintiff Diamond Candles, LLC.*

*Forrest Firm, P.C., by Andrew R. Jones, Beth Anne Stanfield, and Keith E. Richardson, for Defendant Justin Winter.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Jim W. Phillips, Jr., Kimberly M. Marston, and Shepard D. O'Connell, for Defendants Baker Botts, LLP and Brian Lee.*

*Gordon, Rees, Scully, Mansukhani, LLP, by Joshua W. Dixon and Robin K. Vinson, and Jones & Spross, PLLC, by Scott Armstrong, for Defendants Symphony Commerce and Henry Kim.*

Gale, Judge.

## I.  FACTUAL BACKGROUND

3.  The Court makes the following findings of facts solely for purposes of ruling upon the present Motions.

4.  Plaintiff Diamond Candles, LLC ("Diamond Candles") is a North Carolina limited liability company, (Compl. ¶ 6, ECF No. 3), formed on March 16, 2011, (Compl. ¶ 15), and operating in Roxboro, North Carolina and Bahama, North Carolina, selling candles over the internet, (Compl. ¶ 2).

5.  Non-parties David and Brenda Cayton (the "Caytons") are majority owners of Diamond Candles.  (Compl. ¶ 16.)

6.  Defendant Justin Winter ("Winter") is a resident of Durham County, North Carolina, was Chief Executive Officer ("CEO") of Diamond Candles from 2012 until he was terminated by the Caytons in February 2016, and held a twenty-four percent ownership stake in Diamond Candles prior to October 2017.  (Compl. ¶¶ 7, 61.)

7.  Defendant Baker Botts is an international law firm of approximately 720 attorneys with headquarters located in Houston, Texas and offices across the United States as well as in Europe, Russia, the Middle East, and Asia.  (Aff. Julia E.

Guttman ¶¶ 3, 5 ("Guttman Aff."), ECF No. 27.) Baker Botts has no offices, employees, or property in North Carolina; does not pay taxes in North Carolina; and has a limited North Carolina clientele such that only 1.1% of its clients are in North Carolina and only 0.8% of its revenues derive from North Carolina clients. (Guttman Aff. ¶¶ 6–7.) Baker Botts represented Diamond Candles regarding general corporate and financing matters during two engagements, the first spanning from October 2012 to November 2012, and the second from November 2013 to April 2016. (Lee Aff. ¶ 6.)

8.     Defendant Lee is a resident and citizen of California, and a partner at Defendant Baker Botts, working out of its Palo Alto, and San Francisco, California offices. (Aff. Brian Lee ¶ 2 ("Lee Aff."), ECF No. 28.) Lee is licensed to practice law in California, but not in North Carolina. (Lee Aff. ¶ 3.) Lee was the partner primarily responsible for overseeing Baker Botts' representation of Diamond Candles during the two engagements. (Lee Aff. ¶ 6.) Lee has never been to North Carolina, and no Baker Botts' attorney traveled to North Carolina in connection with this representation. (Lee Aff. ¶¶ 10, 12.)

9.     Defendant Symphony Commerce is a Delaware corporation with its principal place of business in San Francisco, California, (Compl. ¶ 10; Aff. Henry Kim ¶ 3 ("Kim Aff."), ECF No. 32), that provided e-commerce services for Diamond Candles, (Compl. ¶ 2), originally under the name SneakPeeq, Inc., (Kim Aff. ¶ 8). Defendant Kim was the President of Symphony Commerce from February 2011 to May 2018, (Kim Aff. ¶ 3), and a citizen and resident of California, (Kim Aff. ¶ 1). Kim traveled to North Carolina to meet with Diamond Candles. (*See* Pl.'s Exs. to Mem.

Opp. Defs.' Mots. Dismiss ("Pl.'s Exs."), ECF No. 41.1 at Ex. E ("Nov. 12, 2012 E-mail").)

10. The gravamen of Diamond Candles' claims is that Winter, Lee, and Kim separately and collectively acted to obtain Diamond Candles at less than its market value, failed to advise the Caytons of several purchase offers, and effectively defeated other purchase transactions from closing because they induced Diamond Candles to pay Symphony Commerce excessive service fees. (Compl. ¶ 3.)

11. In October 2012, Kim introduced Winter to the Great Oaks Venture Capital Group ("Great Oaks"), (Compl. ¶ 23), and later that month Winter relayed to the Caytons that Great Oaks may be interested in purchasing Diamond Candles, (Compl. ¶ 24).

12. In late October 2012, Winter retained Lee as outside counsel for Diamond Candles to represent it in connection with general corporate and financial matters. (Compl. ¶ 25.) Plaintiff does not allege that Winter or Baker Botts solicited the engagement.

13. On November 1, 2012, Great Oaks offered to finance the sale of Diamond Candles' equity. (Compl. ¶ 28.) That transaction did not move forward and Baker Botts and Lee terminated their engagement on November 20, 2012. (Pl.'s Exs., at Ex. I ("First Disengagement Letter").) In connection with this representation, Lee communicated with Diamond Candles by telephone and e-mail without traveling to North Carolina. (Lee Aff. ¶¶ 8–9, 12.)

14.     Diamond Candles alleges that Winter advanced his personal interest rather than Diamond Candles' best interests in connection with this financing, and formulated a "Plan B" by which he would secure the Caytons' majority interest at less than fair value and sell the company at its fair value after obtaining control, enlisting Lee, Kim, and Symphony Commerce in his efforts to implement Plan B, (Compl. ¶ 43), in the process of which he wrongfully shared Diamond Candles' business plans and other trade secrets, (Compl. ¶ 32).

15.     On November 15, 2012, Winter sent Kim an e-mail which stated, "[t]his is what I told [Great Oaks] as you initiated the idea of a discussion around plan b[]" and that, "Brian [Lee] advised that for this type of stuff to definitely keep it off [Diamond Candles'] servers." (Compl. ¶¶ 30–31; Pl.'s Exs., at Ex. G ("Nov. 15, 2012 E-mail").)

16.     On November 21, 2012, Kim asked Winter by e-mail what he could do if he "receive[d] 1 million from greatoaks[,]" to which Winter responded, "I can start exploring that route if that is what we are interested in[,]" and "Brian [Lee] is up to speed . . . and is now representing me with all of this so he is on our team." (Pl.'s Exs., at Ex. J ("Nov. 21, 2012 E-mail").)

17.     While Kim and Winter refer to Lee in these e-mails, Diamond Candles has not identified any direct communication from Lee or Baker Botts regarding "Plan B."

18.     In December 2012, Diamond Candles entered an e-commerce services agreement with Symphony Commerce, which Diamond Candles alleges it

subsequently learned required Diamond Candles to pay far beyond market rates for Symphony Commerce's e-commerce services. (Compl. ¶ 37.)

19. Sometime around January 2013, Venatus Capital informed Winter that it was interested in purchasing Diamond Candles; Winter did not advise the Caytons of this interest but told Venatus Capital that the Caytons rejected the proposal. (Compl. ¶¶ 41–42.)

20. On February 13, 2013, Symphony Commerce granted Winter stock options in the company. (Compl. ¶ 38.)

21. On April 22, 2013, the Caytons were preparing to sign a term sheet with Great Oaks to sell a majority interest in Diamond Candles for twelve million dollars. (Compl. ¶ 46.) Also on April 22, 2013, Winter sent an e-mail to a Diamond Candles' vendor which said, "[i]n next day or two they [the Caytons] will sign agreement to sell at that price to great oaks for 90 days . . . 3-6 mo down the road I can [sell for] 2-3x valuation." (Compl. ¶ 47.)

22. The Caytons' proposed sale to Great Oaks fell through later in 2013, which Diamond Candles alleges was because Great Oaks learned of the excessive payments Diamond Candles was making to Symphony Commerce. (Compl. ¶ 48.)

23. On October 4, 2013, Diamond Candles again retained Baker Botts and Lee to provide corporate advice. (Pl.'s Exs., at Ex. S ("Second Disengagement Letter").) This engagement continued to April 18, 2016. (Second Disengagement Letter.) As before, Lee supervised the engagement and communicated with Diamond Candles by phone and e-mail without traveling to North Carolina. (Lee Aff. ¶¶ 8–

11.) Lee oversaw and supervised other Baker Botts' attorneys located in California who provided Diamond Candles with intellectual property related and other corporate legal services but did not travel to North Carolina in connection with the representation. (Lee Aff. ¶ 10.)

24. At some point in 2014, Digital Fuel offered to purchase Diamond Candles for approximately $35 million. (Compl. ¶ 49.) The Caytons agreed to sell but contend that Digital Fuel rescinded its offer upon learning of payments Diamond Candles was making to Symphony Commerce. (Compl. ¶¶ 50–52.)

25. In September 2014, Winter and Lee discussed acquiring an e-commerce entity, Halo Heaven, (Compl. ¶ 57), in connection with which Lee would provide services in exchange for equity, (Compl. ¶ 58). Lee invited Winter to use only Lee's personal e-mail address in regard to this transaction. (Compl. ¶ 58.) The Complaint does not demonstrate any connection between Diamond Candles and Halo Heaven.

26. The Caytons contend they terminated Winter as CEO in February 2016 upon learning of the matters alleged in the Complaint. (Compl. ¶ 61.)

## II.    PROCEDURAL HISTORY

27. Diamond Candles filed its Complaint on December 31, 2018, alleging eleven causes of action: breach of fiduciary duty against Winter; breach of fiduciary duty against Lee and Baker Botts; constructive fraud against Winter, Lee, and Baker Botts; fraud and deceit against Winter, Lee, and Baker Botts; breach of contract against Winter; tortious interference with contract against Kim and Symphony Commerce; tortious interference with prospective economic advantage against all

Defendants; unfair or deceptive trade practices against Kim and Symphony Commerce; respondeat superior/vicarious liability against Baker Botts; respondeat superior/vicarious liability against Symphony Commerce; and violation of the North Carolina Rackateer Influenced and Corrupt Organization Act ("RICO") against all Defendants.[1] (Compl. ¶¶ 65–116.)

28. The litigation was designated as a mandatory complex business case on February 6, 2019, (Designation Order, ECF No. 1), and assigned to the undersigned that same day, (Assignment Order, ECF No. 2).

29. Lee and Baker Botts jointly filed their motion to dismiss under Rule 12(b)(2) on April 8, 2019. (Defs. Baker Botts LLP's and Brian Lee's Mot. Dismiss Lack Personal Jurisdiction, ECF No. 25.) Symphony Commerce and Kim jointly filed their motion to dismiss under Rules 12(b)(2) and 12(b)(3) on April 8, 2019, (Symphony Commerce and Kim's Mot. Dismiss, ECF No. 29), and their Motion to Dismiss or, in the Alternative, to Stay Under Doctrine of Forum Non Conveniens on July 26, 2019, (ECF No. 59).

30. The Motions have been fully briefed, and the Court has heard arguments of counsel. The Motions are ripe for resolution.

---

[1] Winter filed a Rule 12(b)(6) motion to dismiss the RICO claim against him. (ECF No. 22.) Diamond Candles voluntarily dismissed the RICO claim against all parties in open court.

## III. STANDARD OF REVIEW

### A. Rule 12(b)(2) Motions to Dismiss for Lack of Personal Jurisdiction

31. Personal jurisdiction allows the Court "to assert judicial power over the parties and bind them by its adjudication." *In re A.B.D.*, 173 N.C. App. 77, 83, 617 S.E.2d 707, 711 (2005) (citation and quotation marks omitted). A defendant's challenge to the Court's exercise of personal jurisdiction raises the issue of due process, requiring the Court's focus on the nature and degree of the relationship between the defendant and the forum state. *Beem USA LLLP v. Grax Consulting, LLC*, 2020 N.C. LEXIS 89, at *10 (Feb. 28, 2020) ("The primary concern of the Due Process Clause as it relates to a court's jurisdiction over a nonresident defendant is the protection of an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." (internal citations and quotations omitted)).

32. In the face of a Rule 12(b)(2) motion, the plaintiff must show that the exercise of personal jurisdiction over the defendant on the claims presented is both grounded in North Carolina's long-arm statute, N.C.G.S. § 1-75.4, and consistent with due process. *Id.* at *9. N.C.G.S. § 1-75.4 is to be afforded a liberal construction so as to reach the outer limits of personal jurisdiction allowed by due process. *Id.* at *10.

33. Due process requires the plaintiff to demonstrate that the defendant's conduct is meaningfully connected to the forum state. *Walden v. Fiore*, 571 U.S. 277, 290 (2014). To satisfy due process, a defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice." *Worley v. Moore*, 2017 NCBC LEXIS 15, at \*20 (N.C. Super. Ct. Feb. 28, 2017) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To assess whether sufficient minimum contacts exist, several factors are considered, including: "(1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action with those contacts; (4) the interest of the forum state; and (5) the convenience to the parties." *A.R. Haire, Inc. v. St. Denis*, 176 N.C. App. 255, 260, 625 S.E.2d 894, 899 (2006).

34. Diamond Candles has not asserted that Baker Botts, Lee, Symphony Commerce, and Kim are subject to general jurisdiction through "continuous and systematic" contacts with North Carolina. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Diamond Candles instead invokes specific jurisdiction which "exists when 'the controversy arises out of the defendant's contacts with the forum state.' " *Capitala Grp., LLC v. Columbus Advisory Grp. Ltd.*, 2018 NCBC LEXIS 183, at \*10 (N.C. Super. Ct. Dec. 3, 2018) (quoting *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 366, 348 S.E.2d 782, 786 (1986)); *see also Beem USA LLLP*, 2020 N.C. LEXIS 89, at \*11–12.

35. The Court must find facts adequate to resolve its inquiry into personal jurisdiction, resolving contested facts as necessary, and is not limited to the pleadings when doing so. *See Embark, LLC v. 1105 Media, Inc.*, 231 N.C. App. 538, 550–51, 753 S.E.2d 166, 176 (2014) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "When considering a jurisdictional challenge based on the record, the court must

construe allegations contained in the pleadings in the light most favorable to the plaintiff, assume credibility, and the most favorable inferences stemming from the evidence must be drawn in favor of the existence of jurisdiction." *WLC, LLC v. Watkins*, 454 F. Supp. 2d 426, 431 (M.D.N.C. 2006) (citing *Combs*, 886 F.2d at 676) ("When a court's exercise of personal jurisdiction is challenged pursuant to a Rule 12(b)(2) motion, the plaintiff must prove the existence of a ground for jurisdiction by a preponderance of the evidence."). However, once a defendant offers evidence in support of its challenge to jurisdiction, the allegations of an unverified complaint can no longer be taken as true or controlling. *Herrera v. Charlotte School of Law, LLC*, 2018 NCBC LEXIS 15, at ¶ 52 (N.C. Super. Ct. Feb. 14, 2018) (quotations omitted); *Lulla v. Effective Minds, LLC*, 184 N.C. App. 274, 278, 646 S.E.2d 129, 133 (2007) ("In a situation where a defendant submits evidence to counter the allegations in a plaintiff's complaint, those allegations can no longer be taken as true and the plaintiff can no longer rest on the allegations." (citing *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615–16, 532 S.E.2d 215, 218 (2000)). And in the face of a defendant's sworn testimony challenging personal jurisdiction, "the plaintiff must respond by affidavit or otherwise, setting forth specific facts showing that the court has personal jurisdiction." *Worley*, 2017 NCBC LEXIS 15, at *19. The Court continues to construe uncontroverted allegations in the complaint in plaintiff's favor. *Bruggeman*, 138 N.C. App. at 615, 532 S.E.2d at 218 (quoting *Inspirational Network, Inc. v. Combs*, 131 N.C. App. 231, 235, 506 S.E.2d 754, 758 (1998)).

**B.  Rule 12(b)(3) Motion to Dismiss for Improper Venue**

36.    Parties may contractually agree on a forum for any controversy between them.  *See Lendingtree, LLC v. Anderson*, 228 N.C. App. 403, 408, 747 S.E.2d 292, 297 (2013) ("[A] contractual forum selection clause can modify th[e] default venue rule.").

37.    A Rule 12(b)(3) motion is the appropriate means of seeking enforcement of a forum selection provision in a contract.  *See Hickox v. R&G Group Int'l, Inc.*, 161 N.C. App. 510, 511, 588 S.E.2d 566, 567 (2003) ("[f]undamentally, 'a forum selection clause designates the venue,' and therefore . . . Rule 12(b)(3) would be most applicable" (quoting *Corbin Russwin, Inc. v. Alexander's HDWE, Inc.*, 147 N.C. App. 722, 726, 556 S.E.2d 592, 596 (2001)); *see also Sony Ericsson Mobile Commc'ns USA, Inc. v. Agere Sys., Inc.*, 2007 NCBC LEXIS 28, at *4 (N.C. Super. Ct. Aug. 27, 2007) ("In North Carolina, the proper procedure by which to seek enforcement of a contractual forum selection clause is a motion to dismiss for improper venue pursuant to Rule 12(b)(3).").  When considering a Rule 12(b)(3) motion to dismiss for improper venue based on a contractual venue provision, North Carolina courts evaluate the contractual clause at issue and determine whether it mandates that the action at hand be filed somewhere other than North Carolina.  *See Hickox*, 161 N.C. App. at 512–13, 588 S.E.2d at 568–69.

38.    Parties may also by contract agree to a choice of law, and, if so, "[t]he choice of law provision[] . . . will be used to determine the validity and construction of the contract, regardless of any conflicts between the laws of the named state and the

state in which the case is litigated." *Johnston Cty. v. R.N. Rouse & Co.*, 331 N.C. 88, 92, 414 S.E.2d 30, 33 (1992); *see also Map Supply, Inc. v. Integrated Inventory Sols., LLC*, No. COA07-733, 2008 N.C. App. LEXIS 1008, at *3–5 (N.C. Ct. App. May 20, 2008) (applying Michigan law to interpret a forum selection clause because the contract contained an enforceable Michigan choice of law clause); *Hickox*, 161 N.C. App. at 513–14, 588 S.E.2d at 568–69 (applying North Carolina law to determine the enforceability of a forum selection clause after determining that a California choice of law clause did not apply).

39.     The Court will further consider whether any North Carolina law or public policy prohibits enforcing the parties' contractual provisions. *Hickox*, 161 N.C. App. at 513, 588 S.E.2d at 568–69.

C.     **Forum Non Conveniens**

40.     The doctrine of forum non conveniens arises from N.C.G.S. § 1-75.12(a), which allows a court to stay an action if it "find[s] that it would work substantial injustice for the action to be tried in a court of [North Carolina]."  "[T]he doctrine is invoked when a court has unquestioned jurisdiction but, for policy reasons, declines to exercise it." *Motor Inn Mgmt., Inc. v. Irvin-Fuller Dev. Co.*, 46 N.C. App. 707, 712–13, 266 S.E.2d 368, 371 (1980) (holding that "doctrine of forum non conveniens should be applied with flexibility depending upon the facts and circumstances of each case, with the view of achieving substantial justice between the parties").  The factors that may be considered include:

> convenience and access to another forum; nature of case involved; relief sought; applicable law; possibility of jury view; convenience of witnesses;

availability of compulsory process to produce witnesses; cost of obtaining attendance of witnesses; relative ease of access to sources of proof; enforceability of judgment; burden of litigating matters not of local concern; desirability of litigating matters of local concern in local courts; choice of forum by plaintiff; all other practical considerations which would make the trial easy, expeditious and inexpensive.

*Id.* at 713, 266 S.E.2d at 371.

41. In order to find that a matter should be stayed on forum non conveniens grounds, a North Carolina court must conclude that "(1) a substantial injustice would result if the trial court denied the stay, (2) the stay is warranted by those factors present, and (3) the alternative forum is convenient, reasonable, and fair." *Lawyers Mut. Liab. Ins. Co. of N.C. v. Nexsen Pruet Jacobs & Pollard*, 112 N.C. App. 353, 357, 435 S.E.2d 571, 574 (1993).

42. Generally, North Carolina courts "begin with the presumption that a plaintiff's choice of forum deserves deference." *Cardiorentis Ag v. IQVIA, Ltd.*, 2018 NCBC LEXIS 243, at *8 (N.C. Super. Ct. Dec. 31, 2018). "[A] defendant must satisfy a heavy burden to alter that choice by transferring or staying the case." *Wachovia Bank v. Deutsche Bank Trust Co. Americas*, 2006 NCBC LEXIS 10, at *18 (N.C. Super. Ct. June 2, 2006). "The weight accorded to a plaintiff's choice of forum is particularly appropriate where . . . the plaintiff has selected its home forum to bring suit." *Id.* at *19 (citations omitted).

## IV. ANALYSIS

### A. Baker Botts and Lee's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

43. Baker Botts and Lee contend first that North Carolina's long-arm statute provides no statutory basis for personal jurisdiction over them. Baker Botts

and Lee further contend, even if there is a statutory basis for personal jurisdiction, the exercise of such jurisdiction would contravene due process.

**(1)     Statutory Basis Under the Long Arm Statute**

44.     As Baker Botts and Lee have not entered North Carolina in connection with their representation, the applicable statutory provision requires that Diamond Candles establish Baker Botts and Lee committed a foreign act causing its local injury.  N.C.G.S. § 1-75.4(4).  N.C.G.S. § 1-75.4(4), entitled "Local Injury; Foreign Act," subjects an out-of-state defendant to jurisdiction when its act or omission outside North Carolina results in the plaintiff's injury within North Carolina, provided that when "at or about the time of the injury . . . [s]olicitation or services activities were carried on within [North Carolina] by or on behalf of the defendant."  Our courts have liberally construed the provision to require only that plaintiff claim injury to person or property within this state without mandating evidence or proof of such injury.  *Summit Lodging, LLC v. Jones, Spitz, Moorhead, Baird & Albergotti, P.A.*, 176 N.C. App. 697, 701, 627 S.E.2d 259, 263 (2006) (quoting *Godwin v. Walls*, 118 N.C. App. 341, 349, 455 S.E.2d 473, 480 (1995)).  The term "injury to person or property" "should be given a broad meaning consistent with the legislative intent to enlarge the concecpt of personal jurisdiction to the limits of fairness and due process." *Sherwood v. Sherwood*, 29 N.C. App. 112, 115, 223 S.E.2d 509, 512 (1976); *see also Saxon v. Smith*, 125 N.C. App. 163, 173, 479 S.E.2d 788, 794 (1997) ("Under our 'long arm' statute, North Carolina courts may obtain personal jurisdiction over a non-

resident defendant to the full extent permitted by the Due Process Clause of the United States Constitution.").

45. Baker Botts and Lee first challenge whether Diamond Candles has adequately alleged any injury, because the allegations of the Complaint demonstrate that Diamond Candles itself has lost no value as a result of any act in connection with their legal representation, and that, in fact, any injury appears to have only been suffered by the Caytons individually. However, liberally read, the Complaint asserts that Baker Botts and Lee assisted Winter individually in derogation of their fiduciary duties to Diamond Candles, which was their client. R. Prof. Conduct N.C. St. B. 1.7(a) ("[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest," which includes when "the representation of one client will be directly adverse to another client."). The Complaint further alleges that Baker Botts and Lee assisted in Winter's implementation of "Plan B" pursuant to which Diamond Candles suffered financial loss by excess payments to Symphony Commerce and the resulting loss of financial transactions which would otherwise have closed. The Court acknowledges that Baker Botts and Lee deny any allegation that they were directly involved in any scheme that might have been agreed to or carried out by other defendants and Diamond Candles has offered no direct evidence of their participation when given the opportunity to do so, (*see generally* Pl.'s Exs.), but the Court does not resolve such evidentiary considerations here.

46. Baker Botts and Lee further note that the events upon which Diamond Candles relies took place during the period when Diamond Candles was not an active

client and do not then fall within the long-arm statute. North Carolina courts recognize some uncertainty as to what duties are owed to former clients in such circumstances. *See e.g., In re Southeastern Eye Center-Pending Matters*, 2019 NCBC LEXIS 29, at ¶ 286 (N.C. Super. Ct. May 7, 2019) ("there is little authority in North Carolina addressing claims . . . based upon adverse acts occurring after the conclusion of an attorney-client relationship").

47. Notwithstanding these arguments and guided by the mandate that the long-arm statute must be liberally construed, the Court concludes that Diamond Candles adequately alleged a "local injury" within the scope of N.C.G.S. § 1-75.4(4), so that there is personal jurisdiction if it can be exercised consistent with due process.

### (2) Due Process

48. Diamond Candles and Baker Botts and Lee rely on the decision of the North Carolina Court of Appeals in *Summit Lodging, LLC v. Jones, Spitz, Moorhead, Baird & Albergotti, P.A.*, 176 N.C. App. 697, 627 S.E.2d 259 (2006) to support their due process argument. Because of the emphasis the parties place on the *Summit Lodging* decision, the Court outlines its facts in detail. In that case, the plaintiffs retained a South Carolina attorney, not licensed to practice in North Carolina, and his firm to organize and form a North Carolina limited liability company. *Id.* at 698, 627 S.E.2d at 261. The firm drafted an operating agreement pursuant to North Carolina law and prepared, signed, and filed the articles of organization on behalf of the company with the North Carolina Secretary of State. *Id.* at 698–99, 627 S.E.2d at 262. The firm also helped the company purchase a hotel located in North Carolina,

though none of the firm's attorneys participated in the closing. *Id.* at 699, 627 S.E.2d at 262. In connection with that purchase, the firm communicated by mail and telephone with North Carolina counsel for the seller as well as the North Carolina attorney representing Summit Lodging at closing. *Id.* at 703, 625 S.E.2d at 264.

49. After Summit Lodging defaulted on the loan, it filed a legal malpractice claim against the attorney and his firm, which both moved to dismiss for lack of personal jurisdiction. *Id.* at 700, 627 S.E.2d at 262. The trial court dismissed the action for lack of personal jurisdiction, but the Court of Appeals reversed, finding that the attorney and firm had sufficient minimum contacts with North Carolina though they were not physically present in this state in connection with their representation. *Id.* at 702–03, 625 S.E.2d at 264.

50. The Court does not read the decision in *Summit Lodging* to adopt a bright-line rule that an out-of-state firm's provision of legal services to a North Carolina client in connection with a North Carolina transaction will always support the exercise of personal jurisdiction. The rule remains that a plaintiff in any particular case against its out-of-state counsel must demonstrate adequate facts in connection with the representation to satisfy the due process demand that the defendant has sufficient contacts with the North Carolina forum such that the exercise of personal jurisdiction would be fair. *See Beem USA LLLP*, 2020 N.C. LEXIS 89, at *9–11. The fact that there is a North Carolina client is not alone sufficient to subject the lawyer or his firm to personal jurisdiction.

51.     At least in part, the attorney-client relationship is contractual in nature. Courts have been reluctant to ground jurisdiction on out-of-state acts required to be performed by a party to a contract. *See, e.g., Cameron-Brown Co. v. Daves*, 83 N.C. App. 281, 285–87, 350 S.E.2d 111, 114–15 (1986) (holding no specific jurisdiction over defendant when negotiations over contract at issue occurred in South Carolina, defendant was a South Carolina resident, and defendant's only contact with North Carolina was mailing payments to North Carolina office pursuant to the contract). "Where performance under a contract was intended to be performed outside of the forum in question, courts have been reluctant to assert personal jurisdiction over non-resident defendants." *WLC, LLC*, 454 F. Supp. 2d at 438; *see e.g., Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 452 (4th Cir. 2000) (finding no personal jurisdiction where the contract called for performance predominantly outside of the forum state, even though some acts necessitated its contact with the forum). There is no reason a different rule should apply to an attorney-client relationship.

52.     Federal courts sitting in diversity and applying North Carolina law have recognized a clear distinction between aiming services at a North Carolina resident and contacts with the North Carolina forum itself. *See, e.g., Alacrity Renovation Servs., LLC v. Long*, 2016 U.S. Dist. LEXIS 101735, at *22 (W.D.N.C. 2016) (concluding communications between defendant and plaintiff in North Carolina were insufficient to establish minimum contacts because such communications were with persons who reside in North Carolina, not contacts with North Carolina itself); *Sea-*

*Roy Corp. v. Parts R Parts, Inc.*, 1995 U.S. Dist. LEXIS 21859, at *32 (M.D.N.C. 1995) ("[I]t is necessary to distinguish between a defendant's acts which are aimed at a plaintiff who is located in a forum and those which are aimed at the forum itself: only those acts in the second category constitute purposeful and deliberate contact with the forum which makes it fair and reasonable for the forum to exercise personal jurisdiction." (internal quotations omitted)). The law firm's direct contact with North Carolina regulatory authorities was a factor in *Summit Lodging*, but such contacts are absent here as there is no suggestion that Baker Botts or Lee made any filings in North Carolina.

53. Decisions in other states likewise have rejected an in-state client's efforts to sue its out-of-state lawyer in the client's home forum on due process grounds. *See e.g., Cromeans v. Morgan Keegan & Co.*, 2014 U.S. Dist. LEXIS 48183, at *13–16, 18–20 (W.D. Mo. Apr. 8, 2014) (no personal jurisdiction over out-of-state law firm under Missouri's long-arm statute or the Due Process Clause as contacts were limited to e-mail and telephone correspondence); *Star Tech., Inc. v. Tultex Corp.*, 844 F. Supp. 295, 298–300 (N.D. Tex. 1993) (finding personal jurisdiction lacking over nonresident attorney who had traveled to Texas twice in connection with the representation of his client and filed pleadings in the lawsuit in Dallas, because, other than these two contacts, the attorney's representation occurred in Washington D.C.); *Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C.*, 866 So. 2d 519, 529 (Ala. 2003) ("Case law overflows on the point that providing out-of-state legal representation is not enough to subject an out-of-state lawyer or law firm to the

personal jurisdiction of the state in which a client resides." (quoting *Cape v. von Maur*, 932 F. Supp. 124, 128 (D. Md. 1996))); *Bond v. Messerman*, 895 A.2d 990, 1000–01 (Md. 2006) (holding that the nonresident defendant's contacts with the forum state— limited to communications made from outside the state to a resident in the state— were not sufficient to confer personal jurisdiction).

54. The underlying due process principle is the notion that a defendant is not considered to have availed itself of the benefits of doing business in a state when that defendant has undertaken no specific acts in the forum state or targeted the state itself. *See, e.g., WLC, LLC*, 454 F. Supp. 2d at 438–39 (no specific jurisdiction when the vast majority of work on consulting agreement at issue had taken place in Mississippi and other states, not North Carolina); *Bell v. Mozley*, 216 N.C. App. 540, 546, 716 S.E.2d 868, 873 (2011) (no specific jurisdiction over a defendant whose contacts with North Carolina were "strictly related to defendant's employment. . . . [because his] contacts [were] clearly not the source and [were] in no way related to plaintiff's claims for alienation of affection and criminal conversation"); *Weisman v. Blue Mt. Organics Distrib., LLC*, 2014 NCBC LEXIS 41, ¶ 29 (N.C. Super. Ct. Sept. 5, 2014) (declining to exercise specific jurisdiction when all activity related to relevant transaction "occurred entirely in Virginia").

55. The Court does not rely exclusively on the fact that Baker Botts and Lee did not come to North Carolina. The Court acknowledges that "it is well settled . . . 'that a defendant need not physically enter North Carolina in order for personal jurisdiction to arise.'" *Williamson Produce, Inc. v. Satcher*, 122 N.C. App. 589, 594,

471 S.E.2d 96, 99 (1996) (quoting *Better Business Forms, Inc. v. Davis*, 120 N.C. App. 498, 501, 462 S.E.2d 832, 834 (1995)); *see also Tom Togs*, 318 N.C. at 368, 348 S.E.2d at 787 ("Lack of action by defendant *in* a jurisdiction is not now fatal to the exercise of long-arm jurisdiction.") But in the absence of a physical presence in the State, there must be some significant evidence of a defendant's availment of benefits of doing business in North Carolina before personal jurisdiction arises.

56.    Having fully considered the record, the Court concludes that there is not an adequate demonstration that Baker Botts or Lee can be subjected to personal jurisdiction in North Carolina, and the exercise of personal jurisdiction over them would not "comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 320); *see also Fidrych v. Marriott Int'l, Inc.*, No. 18-2030, 2020 U.S. App. LEXIS 6477, at *29 (4th Cir. Mar. 2, 2020) (holding that even though Marriott had significant business activity in South Carolina, plaintiffs' claims did "not in any sense 'arise out of or relate to' Marriott's connections" to South Carolina and thus those connections were not relevant to the specific jurisdiction inquiry).

57.    Accordingly, the Court should grant Baker Botts and Lee's Motion to Dismiss.

**B.    Symphony Commerce and Kim's Motion to Dismiss for Lack of Personal Jurisdiction**

58.    The Court's jurisdiction inquiry as to Symphony Commerce and Kim is likewise limited to specific jurisdiction as Plaintiff has not asserted general jurisdiction.    However, in this instance, Symphony Commerce and Kim were

physically present in North Carolina in connection with their e-commerce services contract and undertook other actions which demonstrate an intention to avail themselves of the benefit of doing business in the forum. Diamond Candles' claims arise from those acts.

59. As an initial matter, North Carolina's long-arm statute has been satisfied because Diamond Candles' claim that it was substantially overcharged by Symphony Commerce in connection with the e-commerce services agreement falls comfortably within the broad scope of a local injury as contemplated by N.C.G.S. § 1-75.4(4).

60. Symphony Commerce and Kim's motion then turns on whether they had sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice," *Int'l Shoe Co.*, 326 U.S. at 316, and whether the record reflects "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp.*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Beem USA LLLP*, 2020 N.C. LEXIS 89, at *16–17 (finding specific jurisdiction over defendant which purposefully availed itself of the privilege of conducting business in North Carolina by establishing ongoing relationships with persons and entities within this state related to its status of partner in plaintiff organization because the "litigation [wa]s concerned exclusively with the acts and omissions of [the defendants] in connection with [plaintiff]'s affairs").

61. The record provides an adequate basis for such a finding. Kim and Symphony Commerce were directly and substantially involved both in Diamond Candles' business generally and specifically in communications with Winter in those events Plaintiff contends constituted "Plan B." Kim traveled to North Carolina in connection with these activities. (Nov. 12, 2012 E-mail; Nov. 15, 2012 E-mail.) Winter's November 15, 2012 e-mail to Kim followed a meeting held in North Carolina on November 14, 2012. Symphony Commerce enjoyed a continuing revenue stream from Diamond Candles of over $22 Million for its e-commerce services, (Pl.'s Exs., at Ex. A, Aff. David Cayton ¶ 16), and Diamond Candles alleges that this excessive revenue is directly tied to the activity and losses on which the complaint is based, (Compl. ¶¶ 37, 48, 52). Other allegations are that Symphony Commerce provided stock options to Winter, a North Carolina resident, in order to promote implementing "Plan B" from which Symphony Commerce would benefit and the implementation of which included numerous communications between Winter and Kim. (Pl.'s Exs., at Ex. P, Winter/Symphony Stock Option Agreement; *see also* Pl.'s Exs., at Exs. E, F, G, J, K, L, M, O, Q.)

62. The pathway to personal jurisdiction over Symphony Commerce is clear. Kim contends that he, however, is sheltered from the exercise of personal jurisdiction because any act he undertook was in the course of his employment by Symphony Commerce. (Symphony Commerce and Kim Defs.' Mem. Law 7, ECF No. 30.) Kim cites *Mkt. Am. v. Optihealth Prods.*, No. 1:7-00855, 2008 U.S. Dist. LEXIS 95337, at *24 (M.D.N.C. Nov. 21, 2008), to make the generalized argument that actions by

employees or officers of a company may not lead to the legitimate exercise of specific jurisdiction. The Court does not find that this case offers Kim adequate support for his argument. "[A]ctions related to the events in question" taken by an officer or employee may subject them to an out-of-state court's jurisdiction. *Id.* Here, Kim's actions taken while President of Symphony Commerce do not shield him from personal jurisdiction as they are "directly connected to the issues of [the] lawsuit." *Id.* Additionally, as Kim has not offered sworn testimony or other evidence, the Court must accept the substantial allegations and evidence Diamond Candles has offered in support of its claims.

63.     The Court finds Diamond Candles' allegations adequate to support personal jurisdiction over both Symphony Commerce and Kim individually.

## C. Symphony Commerce and Kim's Motion to Dismiss for Improper Venue

64.     Symphony Commerce and Kim's second Motion to Dismiss advances the argument that, if the Court has personal jurisdiction over them, such jurisdiction should yield to the forum selection clause contained in Diamond Candles' e-commerce services agreement with Symphony Commerce. The relevant provision reads:

> This Agreement shall be governed by and construed in accordance with the internal laws of the State of California, without reference to its principles of conflict of laws. Each party hereto agrees that any legal proceeding arising out of the terms of this Agreement shall be commenced in the courts located in the jurisdiction in which the defendant's principal business offices are located.

(Kim Aff., at Ex. A Services Agreement § 7, ECF No. 32.)

65.     The clause is unusual in that it does not choose a single forum, but rather the chosen forum depends on the expedient of which party to the contract was

the first to file, thereby putting the other in the status of "defendant." Had Symphony Commerce elected first to sue Diamond Candles on issues arising from the contract, the clause would provide that Symphony Commerce bring suit in North Carolina.[2]

66.     The Motion to Dismiss for Improper Venue must overcome several hurdles.    First, Diamond Candles brings claims against more than Symphony Commerce, raising practical issues in determining whether this action should be stayed as to parties not subject to the forum selection clause.    It is not clear that Diamond Candles could join Winter to any litigation in California.

67.     Second, while Diamond Candles certainly alleges that the excessive charges provided in the Symphony Commerce contract led, in part, to Diamond Candles' inability to close on a financing or sale, it does not necessarily follow even as to Diamond Candles and Symphony Commerce, that the claims can be said to "arise out of the terms of the contract," so as to make its forum selection clause applicable. *See e.g., Southeastern Auto., Inc. v. Genuine Parts Co.*, 2017 NCBC LEXIS 34, at *34–35 (N.C. Super. Ct. Apr. 17, 2017) (determining whether a forum selection clause was applicable by analyzing whether the dispute between the parties arose from the agreement).    Generally, "[a] forum selection provision designates a particular state or court as the jurisdiction in which the parties will litigate disputes arising out of the contract and their contractual relationship." *Johnson Cty. v. R.N. Rouse & Co.*, 331 N.C. 88, 93, 414 S.E.2d 30, 33 (1992).    To the contrary, Diamond

---

[2] Obviously, this choice weakens any attack that Symphony Commerce had no due process expectation that it might be subject to suit in North Carolina.

Candles' claims are in the nature of tort and seek extracontractual remedies beyond seeking to enforce the agreement.

68. Finally, Winter and Kim personally are not parties to the Symphony Commerce contract with Diamond Candles and subject to its forum selection clause.

69. In sum, on the record, and in its discretion, the Court concludes that the forum selection clause in the Symphony Commerce contract does not compel that Diamond Candles' claims proceed only in California. The Motion to Dismiss for Improper Venue should then be denied.

**D.** **Symphony Commerce and Kim's Alternative Motion to Stay Under the Doctrine of Forum Non Conveniens**

70. Symphony Commerce and Kim contend alternatively that the Court, in its discretion, should transfer the action to California or stay the action pending resolution of an action to be brought in California pursuant to N.C.G.S. § 1-75.12(a). (Symphony Commerce and Kim's Mem. Law Supp. Mot. Dismiss or Stay 3–4, ECF No. 60.)

71. Relying only on broad general arguments, Symphony Commerce and Kim have made no factual demonstration adequate to overcome the strong presumption that favors Diamond Candles' choice of its home forum in North Carolina. They have failed to satisfy their burden to show that the balance of equities tips in their favor so as to justify staying the North Carolina action. *See Wachovia Bank*, 2006 NCBC LEXIS 10, at *19–20 ("[F]or [defendant] to prevail on its Stay Motion, it must show (1) more than a bare balance of convenience in [its] favor and

(2) that a [stay] does more than merely shift the inconvenience." (internal quotations omitted)).

72. For these reasons, on the record, and in the Court's discretion, Defendants Symphony Commerce and Kim's motion to dismiss or, in the alternative, to stay under the doctrine of forum non conveniens should be denied.

## V. CONCLUSION

73. For the reasons stated above:

A. Defendants Baker Botts and Lee's Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED and the action against them is DISMISSED without prejudice to Diamond Candles' right to institute its claims against them in another proper forum;

B. Defendants Symphony Commerce and Kim's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue is DENIED; and

C. Defendants Symphony Commerce and Kim's Motion to Dismiss or, in the Alternative, to Stay Under Doctrine of Forum Non Conveniens is DENIED.

SO ORDERED, this the 12th day of March, 2020.

/s/ James L. Gale
James L. Gale
Senior Business Court Judge