Chi v. N. Riverfront Marina & Hotel LLLP, 2022 NCBC 45.

STATE OF NORTH CAROLINA
NEW HANOVER COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 4611

HE CHI; BIAN YIDE; CAO YONGJIE; CHEN MINZHI; CHENG TAO; HU KUN; LIANG JINGQUAN; LUO PENG; MA QIHONG; MA WEIGUO; SONG YING; WANG JIAN; WANG LING; WANG XUEHAI; XIE QIN; YE XIAFEN; and ZHANG YUNLONG,

Plaintiffs,

v.

NORTHERN RIVERFRONT MARINA AND HOTEL LLLP; NRMH HOLDINGS LLC; NRMH HOTEL HOLDINGS LLC; USA INVESTCO LLC; PAC RIM VENTURE LTD.; RIVERFRONT HOLDINGS II LLC; WILMINGTON RIVERFRONT DEVELOPMENT LLC; GOLDEN MARINA LLC; CIRCLE MARINA CARWASH, INC.; CHARLES J. SCHONINGER; JOHN C. WANG; JIANGKAI WU; CHRISTOPHER ARDALAN; and GONGZHAN WU,

Defendants.

**ORDER AND OPINION ON MOTION TO DISMISS**

1. Plaintiffs in this case are seventeen Chinese citizens who invested in a real estate development project in Wilmington, North Carolina called the Northern Riverfront Marina and Hotel. After the investment failed to provide the allegedly promised return, Plaintiffs filed this action against a host of defendants, including Pac Rim Venture Ltd. ("PRV") and Gongzhan Wu ("Gongzhan"; together with PRV, the "Moving Defendants"). Moving Defendants responded with their Motion to Dismiss Pursuant to North Carolina Rules of Civil Procedure (the "Rule(s)") 12(b)(2) and 12(b)(6) (the "Motion"). (ECF No. 40.)

2. The Court, having considered the Motion, the briefs supporting and opposing the Motion, the parties' arguments at a hearing held on 16 May 2022, and other relevant matters of record, concludes for the reasons stated below that it lacks personal jurisdiction over the Moving Defendants. The Court therefore GRANTS the Moving Defendants' Motion pursuant to Rule 12(b)(2) and dismisses the action against them on that basis. The Court DENIES as moot the Motion with respect to the remaining relief requested.

*Ledolaw, by Michelle Ledo, and DGW Kramer, LLP, by Katherine Burghardt Kramer, for Plaintiffs Ma Qihong, Luo Peng, Liang Jingquan, Hu Kun, Cheng Tao, Chen Minzhi, Cao Yongjie, Bian Yide, He Chi, Zhang Yunlong, Ye Xiafen, Xie Qin, Wang Xuehai, Wang Ling, Wang Jian, Song Ying, and Ma Weiguo.*

*The Law Offices of Oliver & Cheek, PLLC, by George M. Oliver, for Defendants Wilmington Riverfront Development LLC, Riverfront Holdings II LLC, USA InvestCo LLC, NRMH Hotel Holdings LLC, NRMH Holdings LLC, Northern Riverfront Marina and Hotel, LLLP, Christopher Ardalan, John C. Wang, Charles J. Schoninger, Circle Marina Carwash, Inc., and Golden Marina LLC.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Clifton L. Brinson and Grace A. Gregson, and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., by Kevin N. Ainsworth, for Defendants Pac Rim Venture Ltd. and Gongzhan Wu.*

*The Law Offices of G. Grady Richardson, Jr., P.C., by Jennifer L. Carpenter, for Defendant Jiangkai Wu.*[1]

## I. FINDINGS OF FACT

3. The Court makes the following findings of fact solely for purposes of ruling on the present Motion and without prejudice to the Court making contrary

---

[1] Defendant Jiangkai Wu had not been served at the time of the hearing and therefore did not appear.

findings of fact at a later stage of this litigation on a more fully developed record.[2] *See State ex rel. Stein v. E.I. Du Pont de Nemours and Co.*, 2021 NCBC LEXIS 75, at *7 (N.C. Super. Ct. Sept. 9, 2021).

4. The Amended Complaint is verified; however, neither party submitted affidavits or other evidence in support of their position. Therefore, the Court accepts Plaintiffs' allegations in the verified Amended Complaint as true and decides the Motion based solely on those allegations. *See, e.g., Lexington Hous. Auth. v. Gerald*, 2019 NCBC LEXIS 65, at *6–7 (N.C. Super. Ct. Nov. 1, 2019) ("When neither party submits evidence supporting or opposing a finding of personal jurisdiction, the Court must determine 'whether the [claims] contain[] allegations that, if taken as true, set forth a sufficient basis for the court's exercise of jurisdiction.'" (citing *Parker v. Town of Erwin*, 243 N.C. App. 84, 96–97 (2015))); *Herrera v. Charlotte Sch. of Law, LLC,* 2018 NCBC LEXIS 15, at *10 (N.C. Super. Ct. Feb. 14, 2018) (taking allegations of the complaint as true for purposes of deciding a Rule 12(b)(2) motion).

5. Plaintiffs He Chi, Bian Yide, Cao Yongjie, Chen Minzhi, Cheng Tao, Hu Kun, Liang Jingquan, Luo Peng, Ma Qihong, Ma Weiguo, Song Ying, Wang Jian, Wang Ling, Wang Xuehai, Xie Qin, Ye Xiafen, and Zhang Yunlong (collectively, "Plaintiffs") are all citizens of the People's Republic of China ("China"). (First Am. & Verified Compl. [hereinafter "Am. Compl."] ¶ 1, ECF No. 26.)

---

[2] Any determination later stated as a conclusion of law that should have been stated as a finding of fact is incorporated in these Findings of Fact. *See In re M.C.,* 374 N.C. 882, 890 (2020); *Rutherford Elec. Mbrshp. Corp. v. Time Warner Entertainment-Advance/Newhouse P'ship*, 240 N.C. App. 199, 215 (2015) ("Further, conclusions of law which are mischaracterized as findings of fact will be treated on review as conclusions of law.").

6. Defendant Charles J. Schoninger ("Schoninger") resides in New Hanover County, North Carolina. (Am. Compl. ¶ 11.) Schoninger "owns, partially or wholly, directly or indirectly, and manages" Defendants Northern Riverfront Marina and Hotel LLLP ("NRMH"), NRMH Holdings LLC ("NRMH Holdings"), Riverfront Holdings II LLC ("Riverfront Holdings"), NRMH Hotel Holdings LLC ("NRMH Hotel"), USA InvestCo, LLC ("InvestCo"), and Wilmington Riverfront Development LLC ("Wilmington Riverfront"), all of which are North Carolina entities. (Am. Compl. ¶¶ 2–6, 8, 11.)

7. Defendant John C. Wang ("Wang") resides in Los Angeles County, California, and "owns, partially or wholly, directly or indirectly, and manages" Defendant Golden Marina LLC ("Golden Marina") and Defendant Circle Marina Carwash, Inc. ("Circle Marina Carwash"), both California entities. (Am. Compl. ¶¶ 9–10, 12.) Wang is also a member and director of InvestCo, along with Schoninger. (Am. Compl. ¶ 12.)

8. Defendant Christopher Ardalan ("Ardalan") resides in New Hanover County, North Carolina, and along with Schoninger and Wang, is a director of InvestCo. (Am. Compl. ¶ 14.)

9. Gongzhan[3] resides in New York County, New York. (Am. Compl. ¶ 15.) Gongzhan is the President of PRV, a New York corporation with its principal place of business in New York. (Am. Compl. ¶¶ 7, 15.) Since 2008, PRV has also maintained an office in China. (Am. Compl. ¶ 7.)

[3] Gongzhan Wu shares the same name as Jiangkai Wu. To distinguish them, the parties and the Court reference Gongzhan Wu as "Gongzhan" and Jiangkai Wu as "Wu."

10. Defendant Jiangkai "Samson" Wu ("Wu") resides in New York and "was the representative of Defendant PRV in [China] and responsible for promotion and dissemination of information about the Project in [China]." (Am. Compl. ¶ 13.)

11. The Employment-based Fifth Preference Visa Program, commonly known as the EB-5 Program, was created by the Immigration Act of 1990 to "stimulate the U.S. economy by giving immigrant investors the opportunity to permanently live and work in the United States after they have invested in a new commercial enterprise ('NCE')." (Am. Compl. ¶ 29.) In the case of an NCE located in a "Targeted Employment Area,"[4] the required equity investment is $500,000. (Am. Compl. ¶ 29.) An immigrant investor who satisfies the requirements of the EB-5 Program may file for both the investor and the investor's family members to receive conditional permanent resident status or for an EB-5 visa for admission to the United States. (Am. Compl. ¶ 31.)

12. On 7 October 2009, Schoninger formed NRMH as an NCE under the EB-5 Program. (Am. Compl. ¶ 39.) The aim of the enterprise was to develop property along the riverfront in Wilmington, North Carolina, to include construction of a 204-slip marina and a 136-room luxury hotel with two restaurants (the "Project"). (Am. Compl. ¶ 36.) In exchange for their investment capital, investors were admitted as limited partners in NRMH. (Am. Compl. ¶ 39.)

13. On 11 February 2010, Schoninger formed InvestCo. (Am. Compl. ¶ 40.) "InvestCo was formed to act as the marketing, solicitation and promotion entity for

---

[4]According to the First Amended Complaint, a "Targeted Employment Area" is either a rural area or an area beleaguered by high unemployment. (Am. Compl. ¶ 29.)

Schoninger's EB-5 project[.]" It was to "work alongside PRV" to solicit investors. (Am. Compl. ¶ 40.)

14. Both InvestCo and PRV "through Defendants Schoninger, Wang, Wu and Gongzhan" operated offices in China where they conducted seminars, crafted and distributed informational and advertising materials for the Project and contracted with an immigration agency "to further aid in the dissemination of information about the Project to prospective investors." (Am. Compl. ¶ 34.)

15. Marketing materials were created by Schoninger, Wang, Ardalan, Wu, Gongzhan, NRMH, InvestCo, and PRV, although it is not clear from the Amended Complaint who did what in this regard. (Am. Compl. ¶ 42.)

16. PRV contracted with an immigration agency in China, Zheijang Tourism Group Outbound Service Co., Ltd., (the "Agency"), to act as an intermediary between prospective immigrant investors and the EB-5 Project. (Am. Compl. ¶ 42.) The Agency introduced the Project to Plaintiffs and relayed investor questions to employees of PRV, including Wu. (Am. Compl. ¶ 42.) PRV and InvestCo were the two "points of contact" for the Agency and Plaintiffs. (Am. Compl. ¶¶ 42, 44.)

17. Wu, Gongzhan, and the Agency held PRV out to Plaintiffs as the entity "primarily responsible for the marketing of the Project and solicitation of investments as well as coordinating communications between Schoninger, NRMH, InvestCo and Plaintiffs." (Am. Compl. ¶ 45.)

18. NRMH and Schoninger created a Certificate of Agency memorializing NRMH's appointment of PRV as its "Master Agent for China, Hong Kong, and Macao." (Am. Compl. ¶ 46.)

19. Beginning in August 2011, with assistance from the Agency, several Defendants, including Wu and PRV, participated in seminars and distributed marketing materials in more than ten cities across China. (Am. Compl. ¶ 71.) The marketing materials were updated periodically throughout the period of 2011–13. (Am. Compl. ¶ 75.) Plaintiffs now allege that representations made in these presentations and in the materials distributed were false. (*See, e.g.*, Am. Compl. ¶ 78.)

20. InvestCo organized trips during 2011 and 2012 so that potential investors could visit the Project site in North Carolina. PRV is not alleged to have accompanied the investors on these trips. (Am. Compl. ¶ 76.)

21. Between 2011 and 2013, each Plaintiff invested in the Project. (Am. Compl. ¶ 79.) However, things did not go well. In early 2012 the Project began to experience delays in construction. (Am. Compl. ¶ 82.) The marina, which was supposed to be completed by early 2013, was not completed and fully opened for business until spring 2014. (Am. Compl. ¶ 82.) A restaurant was completed in May 2017, but it operated for only four months. A second restaurant designated to replace the first one never opened. (Am. Compl. ¶¶ 83, 87, 100.)

22. Concerned, some Plaintiffs visited North Carolina to see the Project. (Am. Compl. ¶ 86.) Wu, Gongzhan, and PRV "provided logistical assistance" for the

visits, but the specifics of the assistance each provided are not alleged in the Amended Complaint. (Am. Compl. ¶ 86.)

23. While in North Carolina, visiting Plaintiffs were shown around by Schoninger, Ardalan, and Wang. Although they are alleged to be part of the group that "carefully orchestrated" the visits, (Am. Compl. ¶ 86), there is no allegation that Gongzhan, Wu, or anyone else from PRV travelled to North Carolina.

24. After sending a demand letter in April 2016, Plaintiffs ultimately decided to bring this action. (Am. Compl. ¶ 92.)

## II. ANALYSIS AND CONCLUSIONS OF LAW

25. "Personal jurisdiction refers to the Court's ability to assert judicial power over the parties and bind them by its adjudication." *In re A.B.D.,* 173 N.C. App. 77, 83 (2005) (citation omitted). Restrictions on personal jurisdiction are "a consequence of territorial limitations on the power of the respective States." *Banc of Am. Merch. Servs., LLC v. Arby's Rest. Grp., Inc.*, 2021 NCBC LEXIS 60, at *21 (N.C. Super. Ct. June 30, 2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)). When determining whether personal jurisdiction exists, the primary focus "is the defendant's relationship to the forum State[.]" *Capitala Grp., LLC v. Columbus Advisory Grp., LTD*, 2018 NCBC LEXIS 183, at *8 (N.C. Super. Ct. Dec. 3, 2018) (quoting *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779 (2017)).

26. This Court's jurisdiction is constrained by both North Carolina's long-arm statute, N.C.G.S. § 1-75.4, and by federal due process, *see, e.g.*, *Bruggeman v. Meditrust Acquisition Co.,* 138 N.C. App. 612, 614–15 (2000) (there must be "statutory

authority for the exercise of jurisdiction" in addition to due process requirements); *Capitala Grp., LLC*, 2018 NCBC LEXIS 183, at \*8. However, because North Carolina's long arm statute "is to be afforded a liberal construction so as to reach the outer limits of personal jurisdiction allowed by due process[,]" *Diamond Candles, LLC v. Winter*, 2020 NCBC LEXIS 28, at \*11 (N.C. Super. Ct. Mar. 12, 2020) (citing *Beem USA LLLP v. Grax Consulting, LLC*, 373 N.C. 297, 302 (2020)), this two-step analysis often collapses into an inquiry regarding whether due process considerations have been satisfied. *See Kaplan Sch. Supply v. Henry Wurst, Inc.,* 56 N.C. App. 567, 570 (1982) ("Since the requisite statutory authorization for personal jurisdiction is coextensive with federal due process, the critical inquiry in determining whether North Carolina may assert *in personam* jurisdiction over a defendant is whether the assertion thereof comports with due process."); *Capitala Grp., LLC,* 2018 NCBC LEXIS 183, at \*9. Therefore, the Court proceeds directly to the due process inquiry.

27. Once an objection to the exercise of personal jurisdiction has been properly made, Plaintiffs bear the burden of establishing, *prima facie*, that personal jurisdiction over PRV and Gongzhan exists. *See, e.g.*, *Bauer v. Douglas Aquatics, Inc.*, 207 N.C. App 65, 68 (2010); *Williams v. Institute for Computational Studies*, 85 N.C. App. 421 (1987). After careful consideration, the Court concludes that Plaintiffs have failed in this task.

28. In the canonical decision, *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the Supreme Court established that for personal jurisdiction to exist, a defendant must have certain minimum contacts with the forum State "such that

the maintenance of the suit does not offend traditional notions of fair play and substantial justice[,]" *id.* at 316 (citation and internal quotation marks omitted). *International Shoe*'s progeny differentiates between general ("all-purpose") jurisdiction and specific ("case-linked") jurisdiction. *See, e.g.*, *Capitala Grp., LLC*, 2018 NCBC LEXIS 183, at *9 ("[C]ourts 'have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction[.]' " (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))). "General jurisdiction exists when the defendant's contacts with the state are not related to the cause of action but the defendant's activities in the forum are sufficiently 'continuous and systematic.' Specific jurisdiction 'exists when the cause of action arises from or is related to defendant's contacts with the forum.' " *Toshiba Glob. Com. Sols., Inc. v. Smart & Final Stores LLC*, 2022-NCSC-81, ¶ 3 (quoting *Skinner v. Preferred Credit*, 361 N.C. 114, 123 (2006)); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021).

29.     Plaintiffs do not argue that general jurisdiction exists. Rather, they contend that PRV and Gongzhan are subject to this Court's specific jurisdiction. But not every involvement with North Carolina gives rise to specific jurisdiction. For example, "[m]inimum contacts do not arise *ipso facto* from actions of a defendant having an effect in the forum state." *DeSoto Trail, Inc. v. Covington Diesel, Inc.,* 77 N.C. App. 637, 639 (1985) (citation omitted). The analysis "looks to the defendant's contacts with the forum State itself, not with persons who reside there." *Smith v.*

*Automoney*, 2022-NCCOA-509, ¶ 21 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

30. While the nature and quantity of the required contacts will vary depending on the facts, to establish specific jurisdiction, "there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws . . . . This relationship must be 'such that he should reasonably anticipate being haled into court there.' " *Bruggeman*, 138 N.C. App at 617 (quoting *Tom Togs, Inc.*, 318 N.C. at 365); *see also Jones v. Atlas Distributions, LLC,* 2022-NCCOA-106, ¶ 11 (for specific jurisdiction, "courts examine whether the defendants had 'fair warning that a particular activity may subject them to the jurisdiction of the foreign sovereign, so that they may structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' " (quoting *Mucha v. Wagner*, 2021-NCSC-82, ¶ 10)); *Capitala Grp., LLC,* 2018 NCBC LEXIS 183, at *10 (holding that even "direct and intentional" contacts with the State do not give rise to jurisdiction when the defendant has not purposefully availed himself of the privileges of the forum State (citing *Cambridge Homes of N.C. L.P. v. Hyundai Constr., Inc.,* 194 N.C. App. 407, 412–13 (2008))).

31. Other factors used to analyze whether a defendant has had sufficient contacts with the forum to be subject to personal jurisdiction include: (1) the quantity of contacts, (2) the nature and quality of contacts, (3) the source and connection of the cause of action with these contacts, (4) the interest of the forum State, and (5)

convenience to the parties. *Cherry Bekaert & Holland v. Brown*, 99 N.C. App. 626, 632 (1990).

32.     Moving Defendants argue that the Amended Complaint does not allege that either of them had *any* contacts with North Carolina, much less that they have purposefully availed themselves of the privilege of conducting activities in the State. (Br. Supp. Defs.' Mot. Dismiss 23, ECF No. 41.)  They point to the fact that PRV is a New York corporation with a principal place of business in New York.  Its President, Defendant Gongzhan, is a New York resident.  According to Moving Defendants, the Amended Complaint alleges that they engaged in conduct in China directed to Chinese citizens.  (Br. Supp. Defs.' Mot. Dismiss 23.)

33.     Plaintiffs respond that Moving Defendants prepared marketing materials and solicited investment funds from Chinese citizens to be used for a real estate development project located in North Carolina, even if their activity took place in China.  (Br. Supp. Pls.' Opp'n Mot. Dismiss 18–19, ECF No. 52.)  In addition, Plaintiffs allege that Moving Defendants provided logistical assistance for Plaintiffs to travel to North Carolina to visit the project site.  These activities, they argue, are enough to satisfy due process concerns.

34.     On this record, the Court disagrees.  The fact that Moving Defendants worked in China alongside Defendants who themselves had North Carolina contacts does not mean that the North Carolina contacts are imputed to Moving Defendants. "Jurisdiction is proper . . . where the contacts proximately result from actions by defendant *himself* that create a 'substantial connection' with the forum State," not

from the contacts of another. *Walden,* 571 U.S. at 284 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)).

35. Furthermore, Moving Defendants' activities preparing and distributing marketing materials and answering prospective investors' questions in China about a real estate development project in North Carolina, do not provide the requisite contacts for due process purposes. In *Capitala Grp., LLC*, on similar facts,[5] this Court declined to exercise personal jurisdiction over a Delaware company that contracted with a North Carolina-based manager of investment funds to prepare marketing materials and solicit investors. The marketing materials referenced North Carolina, but the defendant never solicited, met with, provided services to, or disseminated information to investors in North Carolina. This Court held that the defendant's contacts with North Carolina were not sufficient to constitute purposeful availment. *Capitala Grp., LLC*, 2018 NCBC LEXIS 183, at *18.

36. Finally, Plaintiffs argue that personal jurisdiction is supported by a contractual relationship that they contend exists between Moving Defendants and North Carolina Defendants. (Br. Supp. Pls.' Opp'n to Mot. Dismiss 18.) Notwithstanding Plaintiffs' argument, the Amended Complaint itself is devoid of any allegation regarding the existence of such a contract. Nor does it allege facts regarding a contractual relationship that would support a finding of personal jurisdiction, such as an allegation that PRV or Gongzhan initiated the relationship

---

[5] The contacts in *Capitala Group LLC* were even more numerous than those alleged here. Defendant's representatives made two trips to North Carolina, neither involving a discussion of terms of their contract, and they sent emails and made phone calls while remotely negotiating the contract. *Capitala Grp., LLC*, 2018 NCBC LEXIS 183, at *13–14.

with the North Carolina entities, that PRV or Gongzhan negotiated the terms of a contract with them in North Carolina, or that PRV or Gongzhan substantially performed their contractual duties here. *See, e.g.*, *Mucha,* 2021-NCSC-82, ¶ 12 ("[I]t was not the [mere] existence of the defendant's contract with a North Carolina resident which alone sufficed to establish the necessary minimum contacts with this State." (quotation omitted)). Indeed, as stated above, Plaintiffs allege that Moving Defendants performed their services in China. "Where performance under a contract was intended to be performed outside of the forum in question, courts have been reluctant to assert personal jurisdiction over non-resident defendants." *WLC, LLC v. Watkins*, 454 F. Supp. 2d 426, 438 (M.D.N.C. June 12, 2006); *see also Capitala Grp., LLC*, 2018 NCBC LEXIS 183, at *12.

37. In short, without more, even if the Amended Complaint included an allegation that a contract existed between Moving Defendants and the North Carolina entities, that bare assertion would not satisfy the Plaintiffs' burden of proof with respect to personal jurisdiction. *Capitala Grp., LLC*, 2018 NCBC LEXIS 183, at *10 ("Courts have long held that a defendant who enters into a contract with a party in another State does not 'automatically establish sufficient minimum contacts in the other party's home forum.' " (quoting *Burger King Corp.*, 471 U.S. at 478)). Instead, Plaintiffs must present evidence that the parties' negotiations or course of dealing with respect to the contract establishes some "substantial connection" with this State. That evidence has not been presented here. *See, e.g.*, *Tom Togs, Inc.*, 318 N.C. at 367;

*PPD Dev., LP v. Cognition Pharms., LLC,* 2010 N.C. App. LEXIS 1027, at \*11 (N.C. Ct. App. June 15, 2010); *Capitala Grp., LLC,* 2018 NCBC LEXIS 183, at \*11.

## III.     CONCLUSION

38.     The Court concludes that it lacks personal jurisdiction over PRV and Gongzhan. The Court therefore GRANTS Moving Defendants' motion to dismiss for lack of personal jurisdiction, and this action against them is dismissed without prejudice to Plaintiffs' ability to institute claims in the proper forum. To the extent PRV and Gongzhan seek dismissal on other grounds, their request is DENIED as moot.

IT IS SO ORDERED, this the 16th day of August, 2022.

/s/ Julianna Theall Earp

Julianna Theall Earp
Special Superior Court Judge
 for Complex Business Cases